Clarence **RANDALL**, Appellant,

v.

**STATE of Indiana, Appellee.**

**No. 1081S296.**

Supreme Court of Indiana.

Feb. 19, 1985.

Rehearing Denied April 22, 1985.

Gregory L. Caldwell, Noblesville, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Clarence Randall was found guilty by a jury in the Vigo Circuit Court of murder and was sentenced to forty years imprisonment. Defendant now directly appeals and raises the following ten issues for our consideration:

1. communication of the bailiff with jurors;
2. arrest and detention of Defendant;
3. denial of Defendant's motion for continuance;
4. failure of the State to identify its confidential informant;
5. identification procedures;
6. admission of firearms into evidence;
7. denial of motion to suppress;
8. sentencing;
9. sufficiency of the evidence; and
10. right to speedy trial.

At approximately 5:15 p.m. on October 25, 1978, three men committed an armed robbery at Brock's Pharmacy, 3725 East 38th Street, Indianapolis. Said men were in the store for a period of at least fifteen minutes. Pharmacist John Stockdale was fatally shot by one of the robbers in the rear of the store and the three men took money from the cash register with them when they left. They also forced employee Gary Szeszycki to tender certain drugs to them and took him with them as a hostage. Szeszycki was later released in the store's parking lot. Defendant Clarence Randall, John Randall, and Anthony Peterson were identified by certain employees of Brock's Pharmacy as the men who committed the robbery and murder.

I

Defendant first contends that the trial court erred when it denied his motion to

vacate judgment and declare a mistrial claiming that the bailiff improperly communicated with the jury and thereby affected the jury's verdict. It is the State's position that any improper communication by the bailiff with the jury in the instant case was harmless error and that the trial judge cured any prejudice by his action.

After the verdicts of the jury finding the defendant guilty on all counts were returned, it came to the attention of defense counsel that there had been communication between the bailiff and the jury pertaining to how they were to vote on all counts. The trial court held a hearing and it was determined that after the jury had agreed on a verdict of guilty of murder, they discussed what action they should take on the remaining counts. Some of them apparently thought that finding Defendant guilty of murder automatically found him guilty of all other counts. Other jurors apparently wondered whether they needed to vote separately on each of the counts. Kenneth Williams, the foreman of the jury, testified that the murder charge had been voted on before the bailiff was called in to inform as to whether all of the counts had to be voted on or if the guilty verdict on the murder charge took care of the others. He further stated that the bailiff merely told them to vote on all of the counts. Harry Harden, the bailiff, testified that he was asked by the jury if it had to vote on all counts and he simply replied: "Yes." He stated he did not tell the jury that if Defendant was guilty on one count then he was guilty on all other counts. Juror Evalena Bridgewater testified that she did not hear the bailiff make any comment concerning Defendant although she recalled that the jury determined that if Defendant was guilty of one count then he was guilty of all. Juror Susan Laitas testified that the jury found Defendant guilty of the murder count before any discussion arose concerning the remaining counts. She further stated that she did not hear the bailiff say that if Defendant was guilty of one count then he must be guilty of all, although the jurors did discuss this feature of the case. After hearing all of this testimony, the trial court

determined that Defendant had not been prejudiced on Count I, the murder charge. The trial judge did find, however, that Defendant had been prejudiced on Counts II through IX, and he accordingly vacated judgment on these counts and imposed sentence only on Count I.

This Court has held that misbehavior or irregularity on the part of a juror must, in order to warrant a new trial, be gross and must have probably injured the accused. Specifically, this Court has held:

> "When an irregularity such as this [bailiff reporting jury's question regarding verdict forms to trial judge instead of bringing jury into court] occurs harm will be presumed, and if the irregularity is not explained, a reversal of the judgment should follow. However, if an explanation for the alleged misconduct is offered, and if this Court is satisfied that no harm or prejudice resulted, then the judgment of the trial court will not be disturbed."

*Gann v. State,* (1975) 263 Ind. 297, 301, 330 N.E.2d 88, 92, *reh. denied, quoting Conrad v. Tomlinson,* (1972) 258 Ind. 115, 123, 279 N.E.2d 546, 551. We have held also that a defendant cannot obtain a reversal of his murder conviction by showing a bailiff's communication to the jury if it is also shown that the defendant was not prejudiced in any way by the bailiff's communication with the jury. We have stated:

> "It is obvious that if the information was divulged after the jury had reached its verdict, and not while the jury was deliberating, it could not have effected (sic) the verdict since the jury would not have known of the information prior to arriving at its verdict."

*Krivanek v. State,* (1969) 252 Ind. 277, 291, 247 N.E.2d 505, 514; *see also Alexander v. State,* (1983) Ind., 449 N.E.2d 1068.

 It is apparent here that the bailiff's communication was done after the jury had arrived at its verdict finding Defendant guilty of murder. It is, of course, true that to answer the jury's question about the remaining counts, the bailiff should have

notified the trial judge and any instructions given should have been made with knowledge of all parties and in open court. It is apparent, however, that the jury in Defendant's case had already reached its guilty verdict on the murder count and we therefore find no prejudice to Defendant in regard to that count. Since the trial judge vacated the judgment on all remaining counts, he appropriately remedied the problem and no prejudicial error remains.

## II

Defendant next claims that the trial court erred by finding that probable cause existed to arrest and detain him. The State counters by asserting that Defendant's argument on appeal presents nothing which entitles him to a reversal of his conviction. We agree.

■■■ Defendant does not claim that evidence was obtained from his arrest which should have been suppressed at trial, in fact, he makes no claim whatsoever concerning the evidence used at his trial and merely argues error in the finding of probable cause. This Court has held that a valid conviction may rest upon an invalid arrest and that the legality of an arrest is relevant only to the admissibility of evidence resulting from a search based upon the alleged illegal arrest. *Glispie v. State*, (1980) 274 Ind. 399, 412 N.E.2d 234; *Adams v. State*, (1974) 262 Ind. 220, 314 N.E.2d 53. Defendant accordingly presents no reversible error on this issue. We note that this Court considered the validity of Defendant's arrest and detention in the appeal of Defendant's brother, John Randall, *Randall v. State*, (1983) Ind., 455 N.E.2d 916, wherein we found that there was sufficient probable cause for the arrest of all three defendants in this case.

## III

During his trial, defendant Clarence Randall presented an alibi defense by testifying in his own behalf that he was with friends and relatives at another place during the robbery and murder in question. The basic story of his alibi was also related to the jury by his sister, Alberta, and his girl-friend, Loretta. In addition, there were other witnesses he wished to call in this regard. One of these witnesses was John Williams who was last known to reside in Cincinnati, Ohio, but who, in the weeks and days immediately prior to the trial, could not be located. Another witness was Frederick Douglas who resided in Muncie, Indiana. Douglas was interviewed by defense counsel and a subpoena was served upon him to appear at the trial to testify in behalf of Clarence Randall. When Douglas failed to appear, the trial court issued a warrant for his arrest to secure his appearance and testimony. When neither Williams nor Douglas appeared to testify, Defendant orally moved for a continuance to obtain these two witnesses.

■■■ The statute governing continuances at the time of Defendant's trial was Ind.Code § 35-1-26-1 (Burns 1979) [repealed effective September 1, 1982] and provided:

"A motion by the defendant to postpone the trial on account of the absence of evidence *can be made only on affidavit* showing materiality of the evidence expected to be obtained, and that due diligence has been used to obtain it, and where the evidence may be; *and if the postponement be asked on account of an absent witness, the affidavit must show the name and residence of the witness, if known, and the probability of procuring his testimony within a reasonable time.* The affidavit must further show that the absence of such witness has not been procured by the act or connivance of the defendant, nor by others at his request, nor with his knowledge and consent, *and what facts he believes the witness will testify to, and that he believes them to be true, and that he is unable to prove such facts by any other witness whose testimony can be as readily procured.* If, thereupon, the prosecuting attorney will admit that the witness, if present, will testify to the facts which the defendant in his affidavit for continuance alleges that he can prove

by the absent witness, or if the evidence be written or documentary, that such documentary evidence exists, the trial shall not be postponed for that cause. The defendant *shall file such affidavit for continuance at least five [5] days before the date set for trial* or shall sustain the burden of establishing to the satisfaction of the court, that the defendant is not at fault for failing to file such affidavit for continuance at an earlier date...." (emphasis added).

It is the State's position that Defendant's oral motion for continuance, made in the midst of trial, did not comply with the statutory requirements for a continuance since Defendant's motion was not accompanied by a written affidavit. Failure to support a motion for a continuance with an affidavit is sufficient by itself to permit the trial court in its discretion to deny the motion. Moreover, Defendant's oral motion was made during the trial and did not comply with the time requirements of the statute. The ruling on the motion therefore was within the discretion of the trial court. *Dillon v. State*, (1983) Ind., 448 N.E.2d 21; *McGraw v. State*, (1981) Ind., 426 N.E.2d 1290. The trial court's ruling can, of course, be reversed only for an abuse of discretion. *Brewer v. State*, (1983) Ind., 449 N.E.2d 1091. Since Defendant did not propose to the trial court any time period within which the absent witnesses could be secured for trial and since it was apparent that the absent witnesses would have given the same testimony substantially as was given by the other alibi witnesses for the defense, Defendant was not prejudiced by the absence of such testimony. The trial court accordingly did not abuse its discretion by denying a continuance.

### IV

 Defendant next contends that the trial court erred by refusing to order the State to disclose the identity of its confidential informant. It is well-settled that the general rule regarding the State's disclosure of an informant's identity at trial is non-disclosure and that the defendant seeking disclosure has the burden to demonstrate an exception to the informant's privilege to remain anonymous. To carry this burden, the defendant must show that the identity of the informer or the content of his communication is relevant and helpful to the accused's defense or is essential to the fair determination of the cause. *Randall, supra; Powers v. State*, (1982) Ind., 440 N.E.2d 1096, *cert. denied* (1983) 461 U.S. 906, 103 S.Ct. 1876, 76 L.Ed.2d 808. The State concedes that the information given by the informant alone did not constitute sufficient probable cause for the police to arrest and charge Defendant in this case. However, the police further investigated and conducted surveillance after learning the informant's information and became aware of other facts sufficient to give them probable cause. Defendant does not show that the informant's identity was essential to a fair determination of his cause such that a balancing of Defendant's interests with the respective interests of the State mandated disclosure. *Randall, supra*. There was, therefore, no error in the trial court's refusal to order disclosure of the confidential informant's identity.

### V

 Defendant also claims that the trial court erred by permitting State's witness Marjorie Carter to identify Defendant in court and by permitting testimony concerning her pre-trial photographic identification and lineup identification of Defendant. Defendant's grounds for such claims are that the pre-trial identification procedures utilized in this case were so impermissibly suggestive that the in-court identification was tainted and should not have been allowed. One of Defendant's specific complaints is that he was not advised of his right to counsel during both the photo array and the physical lineup. At the time of the photographic identification, however, Defendant had not yet been charged with the Brock Pharmacy crimes and he was not placed under arrest and charged with these crimes until after the witness' photographic identification. The right to counsel does

not attach until the judicial adversary proceedings are begun by the filing of either an information or an indictment. *Tabor v. State*, (1984) Ind., 461 N.E.2d 118; *Bray v. State*, (1982) Ind., 443 N.E.2d 310. The physical lineup was held on October 30, 1978, after Defendant had been charged with the Brock's Pharmacy crimes. During the testimony of Officer Morgan concerning the lineup and during the testimony of Marjorie Carter concerning her identification at the lineup, Defendant did not raise any objection concerning the lineup procedures including his lack of counsel. Since Defendant failed to raise a timely and specific objection to the physical lineup at trial, he cannot raise such question for the first time on appeal and has waived such error. *Watkins v. State*, (1983) Ind., 446 N.E.2d 949; *Johnson v. State*, (1983) Ind., 446 N.E.2d 1307; *Drake v. State*, (1979) 272 Ind. 302, 397 N.E.2d 600.

On October 25, 1978, immediately following these crimes, Marjorie Carter gave a description of the robbers to the police. On October 26, 1978, she viewed a multitude of photographs at the Indianapolis Police Station and on October 27, 1978, Marjorie Carter, Karen Jeeter, and Gary Szeszycki were taken by Indianapolis Police Officers to Muncie, Indiana, to view a physical lineup. Defendant now claims that the statement by police that there were some suspects to observe in Muncie was unduly suggestive. It appears, however, that this was a general statement by the police that was not impermissibly suggestive when considered in context. It is, after all, normally presumed that the police have parties at least suspected of being involved before they have witnesses view the persons or their photographs. Testimony by the witnesses and by police was that when the photographic displays were shown to Carter, Jeeter and Szeszycki in Muncie, there was no reference made to the fact that photographs of any particular suspects were included in the photo array and no suggestion was made to any of the witnesses regarding their examination of the photographs.

At Muncie Police Headquarters, Carter, Jeeter and Szeszycki each separately viewed a photographic display. The photos were arranged in three rows of five photos each. Marjorie Carter viewed the photo array and at first identified only two photographs, one of which depicted Defendant Clarence Randall. After leaving the photo display, she continued to think about the crimes and quickly returned to the room to identify the third suspect who was Anthony Peterson. Defendant complains that the arrangement of the photographs was such that the Randalls and Peterson were put in a row next to each other which encouraged each witness to pick all three of them if that witness recognized any one of them. As a matter of fact, this did not happen since Karen Jeeter identified only one of the defendants and Szeszycki did not identify any of them. Carter initially identified only two of them, both being the Randalls. On a moment's reflection after leaving the room holding the photo array, she immediately returned and identified Peterson. There is no indication that her identifications had anything to do with the arrangement of the photographs in relation to each other.

At the lineup, the witnesses were told to view the people in the lineup and to mark the numbers of the people, if any, who they recognized from the robbery. There is no showing that there was any suggestive conduct by the police. The people appearing with the defendants in the lineup were, after all, people the defendants helped select. Defendant's challenges to the photo arrangements and to the lineup pertain only to details of procedure and go to the weight and credibility of the witnesses since Defendant demonstrates no suggestibility of the procedures. Furthermore, the evidence shows that Defendant, along with his companions, was in the store for at least 15 minutes and was in full view of Marjorie Carter for a great deal of this time. She identified Defendant by the fact that he had a distinctive eye problem that was apparent on viewing him. She observed him come to the cash register

with a weapon and then stand by the door, ushering in customers and immediately ordering them to lie on the floor. The store was well lighted and she was able to see this defendant clearly. There was, therefore, a showing that Marjorie Carter had a sufficient independent basis for her in-court identification of Defendant over and above the identification she made at the photo array session and at the physical lineup and without regard to any charges of impermissible suggestibility of those procedures. Defendant shows no basis for reversible error on this issue. *See White v. State*, (1982) Ind., 433 N.E.2d 761; *Evey v. State*, (1981) 275 Ind. 674, 419 N.E.2d 971.

## VI, VII, and VIII

In the argument section of the brief, Appellant raises issues pertaining to the admission of certain firearms into evidence, the admission of certain evidence obtained during a search of his hotel room and the trial court's imposition of sentence. Defendant admits on these three issues, however, that he is unable to demonstrate reversible error and expressly waives consideration of such issues. Although he presents a fact situation regarding the search of the hotel room, his brief contains no argument on the issue and no authority in support of any argument he may have. We accordingly will not consider any of these issues. *Alexander, supra; Akins v. State*, (1981) Ind., 429 N.E.2d 232, *reh. denied* (1982); Ind.R.App.P. 8.3(A)(7).

## IX

Defendant next contends that the evidence presented at trial was insufficient to sustain his conviction. The sufficiency of evidence is governed by a well-settled standard and scope of review. This Court does not weigh the evidence nor judge the credibility of witnesses and we consider only that evidence most favorable to the State and all reasonable inferences to be drawn therefrom. When there is substantial evidence of probative value to support a conviction, the finding of the trier of fact will not be disturbed. *Grossenbacher v. State*, (1984) Ind., 468 N.E.2d 1056.

Defendant's insufficiency claims concern only the weight and credibility to be given to certain items of evidence. Specifically, he claims that the physical evidence adduced at trial does not connect him to the crimes and that the identification evidence is not worthy of belief. He further claims that his alibi evidence was worthy of belief and that the jury should have believed it. We already have shown that certain eyewitnesses identified Defendant as a perpetrator of this crime notwithstanding Defendant's witnesses who testified about an alibi defense placing Defendant somewhere else. These were all matters of fact to be tried and determined by the jury. The weight of such evidence and the credibility of the witnesses was within the jury's province and we will not second guess them on appeal. *Cuppett v. State*, (1983) Ind., 448 N.E.2d 298; *Oatts v. State*, (1982) Ind., 437 N.E.2d 463, *reh. denied.* There was more than sufficient evidence presented at trial to sustain the guilty verdict returned by the jury.

## X

Finally, Defendant claims his speedy trial rights were violated. On appeal, Defendant claims a violation of Ind.R.Crim.P. 4 and also a violation of the Sixth Amendment of the United States Constitution and of Art. I, § 12, of the Indiana Constitution which guarantee a speedy trial.

The record shows that Defendant was first charged along with Peterson and John Randall in October, 1978. Defendant's motion to dismiss was filed on July 3, 1980, and was not based upon any alleged constitutional violation but rather was founded upon an alleged violation of Ind.R.Crim.P. 4. Only on the day of trial, August 4, 1980, when Defendant renewed his motion to dismiss, did Defendant voice an objection based upon constitutional grounds as well as criminal rule 4. We therefore find that it was improper for Defendant to wait until the day of his trial to raise these constitutional grounds for

dismissal and accordingly find that Defendant waived this argument. *See also Webb v. State,* (1983) Ind., 453 N.E.2d 180, *cert. denied* (1984) — U.S. —, 104 S.Ct. 1449, 79 L.Ed.2d 767. With regard to Ind.R. Crim.P. 4, it has been held that a defendant must object at his earliest opportunity or else he will be deemed to have acquiesced in the setting of a trial date beyond that generally required by the rule. *Lloyd v. State,* (1983) Ind., 448 N.E.2d 1062, *reh. denied; Little v. State,* (1981) 275 Ind. 78, 415 ·N.E.2d 44. Furthermore, it is clear that if a defendant genuinely desires to be tried within the one year period set by the rule, then he must raise an objection in time to permit the trial court to set a trial date within the one year period. *State ex rel. Engle v. Greene Circuit Court,* (1981) Ind., 421 N.E.2d 1108; *Arch v. State,* (1978) 269 Ind. 450, 381 N.E.2d 465. The record shows that Defendant did not make any objections which afforded the trial court the opportunity to comply with criminal rule 4 prior to July 3, 1980, the date when his case was set for trial on August 4, 1980. When a defendant fails to voice a prompt objection, he is deemed to have waived the issue. *Randall, supra; Little, supra.* Moreover, Defendant does not detail the number of days for which he and his co-defendants are responsible for delay such that a date can be determined to be the one by which the State was required to bring them to trial. Although the State somewhat delayed these proceedings by dismissing and refiling its charges, the record shows that Defendant filed many motions which also effectively delayed the progress of this case to·trial. These motions included a large number of motions for continuance as well as motions to change venue and motions to be let to bail. The record also shows that before the case of co-defendant John Randall was separated from the others on July 3, 1980, co-defendants Peterson and John Randall filed motions similar to Defendant's without objection from Defendant. In view of all the facts and circumstances of the record before us, Defendant has not shown that his speedy trial rights were violated. *Randall, supra; Little, supra; State ex rel. Engle v. Greene Circuit Court, supra.*

The trial court is in all things affirmed.

GIVAN, C.J., and HUNTER and PRENTICE, JJ., concur.

DeBRULER, J., concurs in result without opinion.