James M. BENNER, Appellant,

v.

STATE of Indiana, Appellee.

No. 09S00–8904–CR–289.

Supreme Court of Indiana.

Oct. 15, 1991.

Richard Kammen, Katharine Polito, McClure, McClure & Kammen, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Wendy Stone Messer, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Murder, for which he received a sentence of sixty (60) years, and Attempted Murder, for which he received a sentence of fifty (50) years, the sentences to run consecutively.

The facts are: Appellant and Christine Strasser, the victim of the attempted murder, had known each other since 1986 and had lived together off and on until January of 1988. In February of 1988, appellant came to Strasser's apartment, and when she told him she did not wish to see him anymore, he stated that he could not live without her and would kill himself. After an evening of playing cards and drinking with friends, which lasted until 5:00 a.m. on February 26, Strasser awoke between 11:30 a.m. and noon and had breakfast with Tim Piercefield, the murder victim in this case. While they were eating, appellant knocked on the door. Strasser answered the door, and appellant kicked the door open, knocking Strasser's plate from her hand.

Appellant immediately went in search of Piercefield, who had retreated to the back of the apartment. Strasser followed and observed appellant grab Piercefield and shake him. She then noticed that Piercefield had a hole in his forehead and was bleeding. When appellant released Piercefield, he fell against the bathroom wall, slid to the floor, and looked as if he was trying to speak. Appellant then stepped around Strasser, entered the bathroom and fired two additional shots at Piercefield.

Appellant then grabbed Strasser and shot her in the face, the bullet entering just below her jaw. The next thing she remembered was when the decedent's uncle, Mark Piercefield, and Kevin Beverly arrived at the apartment that afternoon. The men, observing her blood-splattered condition, asked her what had occurred, and she told them appellant had shot her and Piercefield. Strasser was taken to the hospital and an ambulance was procured for Piercefield; it was determined, however, that he had died sometime between 10:00 a.m. and 2:00 p.m. that day.

The police spoke with Strasser in the hospital and she told them that she and Piercefield had been shot by appellant. The police went to appellant's residence where a search disclosed several firearms and a quantity of ammunition including 102 rounds of .38 caliber ammunition that could be fired from the type of pistol which fired the bullets taken from the deceased's body. However, no weapon of that type was found.

Appellant was employed by Command Investigation Bureau, Inc., which employment entitled him to carry weapons. A document was found among his possessions which had been issued by his employer describing certain weapons in appellant's possession. Appended to that list was a handwritten description of a weapon that ballistics experts testified could have fired the ammunition found in the apartment and which was compatible with the type of ammunition used in the killing of the decedent.

Appellant claims he was denied due process of law in that no omnibus date was set for the charge of attempted murder. A murder charge was filed against appellant on February 26, 1988. Counsel was appointed and an omnibus date was set for April 26, 1988. The final pretrial conference was set for June 28, 1988. At the request of defense counsel, the omnibus hearing was continued until June 28, 1988. On June 20, 1988, the State filed an information charging appellant with attempted murder. Over an objection of counsel, the trial court ordered both charges to be tried starting August 2, 1988.

■ Appellant claims this did not give counsel ample opportunity to prepare for the attempted murder charge and that he was forced to go to trial without an omnibus hearing on that charge. Although appellant's counsel was not present on the day he was arraigned on the attempted murder charge, July 28, 1988, an initial hearing is not a critical stage of the process requiring presence of counsel. *Hayre v. State* (1986), Ind.App., 495 N.E.2d 550.

■ In the case at bar, counsel had been appointed previously and nothing occurred at the arraignment on the attempted murder charge which would have jeopardized appellant by reason of the absence of his counsel. *See Williams v. State* (1990), Ind., 555 N.E.2d 133. No separate omnibus hearing was set on the attempted murder charge because it was joined with the original murder charge and such joinder is authorized under Ind.Code § 35-34-1-10(b).

■ Appellant argues that he did not have sufficient time to prepare for the attempted murder charge. However, appellant's defense in this case was alibi. He claimed he was not present in Strasser's apartment at the time of the killing. He produced alibi witnesses from Indianapolis who testified that he was in Indianapolis near the time the State's evidence showed the attack occurred 75 miles away in Logansport.

Inasmuch as both attacks occurred during a single incident, it hardly can be seen how the addition of the attempted murder charge in any way jeopardized appellant's defense. We see no error in the trial court's denial of appellant's motions to dismiss Count II, to sever Count II, and to continue the proceeding because of the addition of Count II.

■ Under Ind.Code § 35-34-1-9 *et seq.*, a defendant has an absolute right to a severance if the offenses are joined solely on the ground that they are of the same or similar character. However, in the case at bar, the two charges grew out of the same occurrence; thus the severance was within the sound discretion of the trial court. *Moore v. State* (1989), Ind., 545 N.E.2d 828. The granting of a continuance also was discretionary with the trial court; refusal of a request for a continuance to enable counsel to prepare for trial is not reversible error where an appellant's defense is not shown to have been harmed. *Castile v. State* (1986), Ind., 492 N.E.2d 287. Under the facts in the case at bar, we see no reversible error in the trial court's ruling on these motions.

■ Appellant contends the trial court erred in failing to sustain his motion for a mistrial based upon the State's misconduct in the display of two unrelated revolvers and the admission of irrelevant evidence, including ammunition found in appellant's home and the document listing weapons which he had in his possession. The evidence was that ammunition was found in appellant's possession of the type used to kill the decedent. However, no weapon was found in appellant's possession capable of firing such ammunition. However, the list of weapons purportedly owned by appellant did include such a weapon.

When the ballistics expert was on the witness stand, the State showed him the two weapons found in appellant's possession and the ammunition of the type which killed the victim. He testified that neither weapon was capable of firing that ammunition. He then was asked if the ammunition could have been fired from the type of weapon listed but not found in appellant's possession. He responded in the affirmative. Under the circumstances, the State was entitled to present to the jury the circumstantial evidence from which they could find that appellant in fact was in possession of ammunition which could have been used in the attack and that he at one time had possessed a gun capable of firing such ammunition but that none was found in his possession shortly after the crime was committed. The jury logically could conclude that appellant had disposed of such a weapon.

■ Appellant also claims that because neither weapon which was displayed to the expert witness and to the jury was entered in evidence, the prosecutor committed reversible error when he referred to those weapons in his final argument to the jury. Even if we would assume for the sake of argument that such a display and reference constituted misconduct, it also must be shown that the misconduct placed appellant in a position of grave peril to which he should not have been subjected. *Maldonado v. State* (1976), 265 Ind. 492, 355 N.E.2d 843. It was presented to the jury that neither of the weapons was used in the commission of the crime, and that they were shown to the expert witness merely for the purpose of demonstrating that they could not have fired the ammunition found in appellant's home.

■ The display of the weapons and the ammunition aided the jury in its evaluation of the expert witness' testimony. It was the responsibility of the jury to accept or reject the testimony of the expert. *McCollum v. State* (1980), 275 Ind. 1, 413 N.E.2d 912. Experiments and demonstrations are permitted to be conducted during a trial if they will aid the court and the jury. *Green v. State* (1945), 223 Ind. 614, 63 N.E.2d 292. We see no reversible error in allowing such a demonstration.

■ Appellant claims the ammunition found in his apartment was completely unconnected with the alleged crime as was the list of weapons which was found in his possession. Physical evidence need only constitute a small but legitimate link in the chain of evidence connecting a defendant with the crime. Any inconclusive connection with the defendant goes to the weight of the evidence, not its admissibility. *Sharp v. State* (1989), Ind., 534 N.E.2d 708, *cert. denied,* —— U.S. ——, 110 S.Ct. 1481, 108 L.Ed.2d 617. We see no error in the admission of these exhibits.

■ Appellant contends the verdict of the jury is not supported by sufficient evidence. He bases this claim upon the fact that Strasser had been drinking all night before the crimes were committed and that by her own admission she had been very drunk. He takes the position that her testimony should have been discredited, that the evidence of his alibi witnesses should have been believed, and that the trial judge should have exercised his prerogative as the "thirteenth juror" and set aside the verdict of the jury.

■ Appellant is a person well-known to Strasser. When she was found severely injured after the attack, she immediately named appellant as her attacker. When police questioned her at the hospital, she repeated the accusation. She was steadfast in her testimony at trial in nam-

ing appellant as her attacker. Although appellant presented alibi witnesses, it was the prerogative of the jury to weigh the evidence and determine who to believe. *Braswell v. State* (1990), Ind., 550 N.E.2d 1280. This Court will not second-guess the jury's determination on appeal. *Randall v. State* (1985), Ind., 474 N.E.2d 76. There is ample evidence in this case to support the verdict of the jury.

Appellant claims the trial court erred in refusing to grant a new trial when the jurors indicated to the court that they felt threatened. However, this was not a situation where a person supposedly connected with the trial had threatened jurors. When the trial judge had announced to the jury that they would be sequestered, some of them voiced alarm that the sequestration must have been brought about either by threats toward them or members of their family. This situation and what he proposed to say to the jury in response to their concern was presented to counsel by the trial judge. This was proper procedure. *See Marsillett v. State* (1986), Ind., 495 N.E.2d 699.

After conferring with counsel and obtaining their agreement, the trial judge read the following statement to the jury:

> "The Court on its own motion has entered an order for sequester of the jury to insure the fairness and impartiality in this trial. This is being done only for the reason to secure a fair trial for the State and the defendant."

In the case at bar, there was no exposure of the jury to prejudicial information such as occurred in *Lindsey v. State* (1973), 260 Ind. 351, 295 N.E.2d 819, cited by appellant. The trial court's handling of this situation was proper.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, DICKSON and KRAHULIK, JJ., concur.