Calvert BAXTER, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 49S00–9812–CR–751.

Supreme Court of Indiana.

April 24, 2000

Rehearing Denied July 5, 2000.

430

Kenneth T. Roberts, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

BOEHM, Justice.

Calvert Baxter was found guilty of murder and sentenced to sixty-five years imprisonment. In this direct appeal, Baxter raises seven issues for review: (1) whether the State committed prosecutorial misconduct by charging a defense witness with the same crime shortly before trial; (2) whether Baxter was prejudiced by a continuance granted to the State; (3) whether the State put a witness on the stand who it knew would perjure himself; (4) whether the jurors were improperly separated after they started their deliberations; (5) whether an alleged improper communication between the bailiff and jurors necessitates a new trial; (6) whether the evidence was sufficient to convict Baxter of murder based on accomplice liability; and (7) whether imposition of the maximum sentence for murder was proper. We affirm the conviction for murder, but reduce Baxter's sentence to fifty-five years.

**Factual and Procedural Background**

In the evening of June 14, 1997, Baxter, Michael Johnson, and Curtis Williams drove from the south side of Indianapolis to pick up Vernell Woods at 86th Street and Allisonville Road on the north side. Baxter drove because he was the only one who possessed a valid driver's license. On the return trip, Johnson was in the front passenger seat, and Woods and Williams were in the rear, with Woods on the passenger side.[1] At 46th Street and Allisonville, Kirsten Knoebel pulled out in front of them in her mini-van, causing Baxter to swerve to avoid hitting her. Woods yelled an obscenity out the window. When the two cars stopped at the next light, Knoebel shouted a racial epithet at the group. Knoebel, Woods, and Williams continued to scream back and forth at one another until the light turned green. Woods told Baxter to follow Knoebel and Baxter complied.

---

1. In Baxter's statement to police, he placed Williams in the front seat next to him, with Johnson and Woods in the back.

According to Williams' testimony, Woods normally carried a gun and had shown Williams a weapon earlier in the evening. As the four pursued Knoebel, Woods was "playing with his side" where the gun was stowed, and Johnson was throwing trash or pennies out the window at Knoebel. Approximately midway in the chase, according to Williams, he expressed concern that "somebody else riding down the ... street" might get injured. The chase continued. Near 46th Street and Rookwood, approximately four miles from the first encounter, Baxter pulled up beside Knoebel. Woods fired several shots at Knoebel's van, breaking the windows and striking Knoebel. After the shots were fired, Baxter turned into a driveway, where the four remained for several seconds, screaming profanities. Baxter then pulled back out, turned out the lights, and headed in the opposite direction. According to both Williams and Baxter, after the shooting, Woods said, "[I]f anybody opens up their mouth about this, then they're going to be just like her."

Knoebel's van continued along 46th Street and then swerved off across a lawn at the Butler University campus and came to rest in the library parking lot. At 12:03 a.m. on June 15, a campus police officer saw Knoebel's van parked at an odd angle in the Butler lot and found Knoebel dead inside.

Baxter learned of Knoebel's death on the news the next evening. Three months later, on September 15, 1997, police received a tip implicating Woods and Williams in the shooting. Police then located Baxter, who was a friend of Woods, and Baxter told them that he had been the driver of the car involved in the incident.

Baxter was charged with murder under an accomplice liability theory and also with assisting a criminal. He was found guilty on both counts. After merging the assisting a criminal conviction into the murder conviction, the trial court[2] sentenced Baxter to sixty-five years imprisonment, the maximum sentence for murder. Baxter filed a motion to correct error, which the trial court denied. This appeal followed.

## I. The State's Continuance

■ Baxter argues that he was prejudiced when the trial court granted the State's motion for a continuance on December 24, 1997. Specifically, he argues that Johnson, who had not yet been charged with a crime at the time of the motion, would have been available to testify at trial if the State had not been granted the continuance.

■ Courts do not favor continuances to allow more time to prepare for trial and should grant these motions only where good cause is shown and it is in the interests of justice. *Williams v. State,* 681 N.E.2d 195, 202 (Ind.1997). However, the granting of a motion for a continuance on nonstatutory grounds[3] lies within the discretion of the trial court and will be reversed only for an abuse of that discretion. *See id.; Kindred v. State,* 540 N.E.2d 1161, 1177 (Ind.1989) (citations omitted); *Sims v. State,* 521 N.E.2d 336, 338 (Ind. 1988); *Mengon v. State,* 505 N.E.2d 788, 791 (Ind.1987). There is no abuse of discretion if the appellant was not prejudiced by the continuance. *Sims,* 521 N.E.2d at 338.

The continuance in question was granted at the request of the prosecution after it had located officials from the City of India-

---

2. Judge Reichard presided over Baxter's trial and sentencing. She recused herself before the hearing on Baxter's motion to correct errors, and the case was reassigned to Judge Bradford.

3. Baxter also argues that, under Indiana Code § 35-36-7-2, the State must show that the evidence is material and that it has not been

able to procure the evidence in the exercise of due diligence in order to be entitled to a continuance. However, "[t]he statute does not restrict the court's discretionary powers. Instead it merely compels the granting of a continuance under certain clearly delineated circumstances." *Bates v. State,* 520 N.E.2d 129, 131 (Ind.Ct.App.1988).

napolis to conduct a study of the traffic flow on the route along which Baxter followed Knoebel. The State contended that this material would "assist the trier of fact in determining the Defendant['s] intent concerning these allegations." The State's inability to obtain this information earlier was alleged to be a result of the prosecuting attorneys' heavy trial calendar. At trial, this witness testified to the amount of time it would have taken for Baxter to drive that route.

Because the State charged Johnson on December 29, 1997, and Baxter's initial trial date of December 15 had already been pushed back to January 5, 1998 due to the trial court's congested calendar, the grant of a continuance to January 20, 1998 did not result in any prejudice to Baxter. There was no abuse of discretion under these circumstances.

## II.  Prosecutorial Misconduct

■ Baxter maintains that the State committed prosecutorial misconduct by charging Johnson shortly before Baxter was scheduled for trial and then refusing to grant Johnson use immunity. Baxter argues that he was deprived of critical exculpatory evidence when Johnson invoked his Fifth Amendment privilege against self-incrimination. Specifically, Baxter alleges that the State's decision to grant use immunity to Williams but not Johnson was made "with the deliberate intention of distorting the fact-finding process," and that for this reason the conviction must be reversed. Baxter's foundation for this claim is that Johnson was not charged in October after his involvement in the incident was first discovered, but rather two and a half months later, six days before the trial was scheduled to begin and three weeks before it actually started.[4]

■ Distortion of the fact-finding process may be established by showing:  (1)

that prosecutorial overreaching, through threats, harassment, or other forms of intimidation, has effectively forced the witness to invoke the Fifth Amendment, or the prosecutor has engaged in discriminatory use of immunity grants to gain a tactical advantage;  (2) the witness' testimony is material, exculpatory, and not cumulative;  and (3) the defendant has no other way to obtain the evidence. *Goudy v. State*, 689 N.E.2d 686, 696 (Ind.1997) (citations omitted).

The State's decision to charge Johnson and refuse him use immunity was reviewed by the trial court at the hearing on Baxter's motion to correct error. The prosecution testified that the timing of the charge was a result of Johnson's failure to cooperate and remain in touch with the police as he had initially agreed. Johnson testified that he was unsure if he would have testified even if he had not been charged. In addition, defense counsel never asserted that the State had acted improperly. The contention in the trial court was: "We are merely seeking justice ... and if the jury heard the evidence of Mr. Johnson, they might have reached a different result." The trial court then concluded that there had not been "prosecutorial overreaching, through threats, harassment, or otherwise."

We agree with the trial court that the record exhibits no evidence of prosecutorial overreaching, and Baxter is not entitled to reversal on this basis.

## III.  Williams' Testimony

■ Baxter claims that the State put Williams on the stand knowing that Williams would give perjured testimony. It is well established that the knowing use of perjured testimony constitutes grounds for reversal. *See Evans v. State*, 489 N.E.2d 942, 948 (Ind.1986) ("The knowing use of perjured testimony is fundamentally

4.  Baxter's trial was originally set for December 15, 1997, then rescheduled due to court congestion for January 5, 1998, and rescheduled again for January 20, 1998 after the

State was granted its motion for a continuance.  Johnson was charged on December 29, 1997, one week after the State had moved for a continuance.

unfair and a conviction obtained by the use of such testimony will not be upheld."). It is equally clear, however, that contradictory or inconsistent testimony does not constitute perjury, and that it is up to the jury to resolve conflicting testimony. *See id.*

Baxter maintains that because the State had acquired information through Johnson and Baxter implicating Williams as the shooter, the State knew that Williams' testimony would be perjured. At the hearing on the motion to correct error, the prosecutor at trial testified that, "[w]e just simply had the facts as we were given them by the participants to the incident," and "[a]t no time did I feel comfortable that any of these people ... was telling the complete truth." According to the prosecutor, this was a fact-sensitive case in which only the participants knew what had really happened, and therefore he could not have known whether Williams would commit perjury on the stand.

Williams' in-court testimony at trial varied significantly from his previous statements to the authorities. In particular, his testimony bearing on Baxter's knowledge of the events in the back seat as the car pursued Knoebel varied from his earlier accounts. Williams initially gave a statement in which he said that Woods had brandished the gun at College Avenue, at least a mile before he finally shot at Knoebel. At trial, however, he admitted only that Woods was "playing with his side," tending to indicate that Baxter would not have known there was a gun in the car.

The trial court found that the State had not knowingly used perjured testimony. Although Williams' testimony was contradictory, there is no evidence that the State knew what actually transpired or knew that Williams' account on the stand was false. Indeed, the trial testimony was more favorable to Baxter than the pretrial account. The use of Williams' testimony is not reversible error.

## IV. Jury Separation

At some point during deliberations, the bailiff allowed three jurors to walk outside to smoke. Baxter maintains that this "separation" of smokers from nonsmokers in the midst of deliberations requires reversal. The jurors remained in the bailiff's range of vision through a window, but not within his hearing. At the hearing on the motion to correct error, the trial court found that the separation was not improper, and noted that no objection was raised when it occurred.

■■■ The rule regarding jury separation during deliberations is well established and strict. Barring exigent circumstances, in a criminal trial the jury is to remain together throughout deliberations and until a verdict is returned. *See Bradford v. State,* 675 N.E.2d 296, 304–05 (Ind. 1996) (citing *Follrad v. State,* 428 N.E.2d 1201, 1202 (Ind.1981)). Ordinarily, if the jury is allowed to separate, the State must prove beyond a reasonable doubt that the verdict was not affected by the separation and that the verdict is clearly supported by the evidence. *Pruitt v. State,* 622 N.E.2d 469, 471 (Ind.1993). We have never been asked to consider whether a "separation" is permissible to allow jurors who smoke to do so without requiring the nonsmokers to be in the same room. This Court has held, however, that unless there is an objection to the separation at the time it occurs, it is not properly preserved for appellate review. *See Bradford,* 675 N.E.2d at 305. Baxter did not object to the jury separation until the filing of the motion to correct error and has therefore waived this argument for review.

## V. Bailiff's Response to Juror's Question

■■■ Baxter alleges that his conviction must be reversed because of an alleged improper communication between the bailiff and jury. When an improper communication takes place between the bailiff and the jury, "there [is] a presumption of harm to the defendant that the

State must rebut to avoid reversal." *Alexander v. State*, 449 N.E.2d 1068, 1074 (Ind. 1983). Reversal may be avoided only if no harm or prejudice to the defendant results. *See Randall v. State*, 474 N.E.2d 76, 79 (Ind.1985) ("When an irregularity such as this ... occurs harm will be presumed, and if the irregularity is not explained, a reversal of the judgment should follow. However, if an explanation for the alleged misconduct is offered, and if this Court is satisfied that no harm or prejudice resulted, then the judgment of the trial court will not be disturbed.") (citations omitted). When the trial court has addressed the issue of improper communications, we do not reweigh its determinations as to the credibility of the witnesses. *See Wilson v. State*, 511 N.E.2d 1014, 1018 (Ind.1987). Because this is a factual determination, it is subject to a clearly erroneous standard of review. *See Butler v. State*, 724 N.E.2d 600, 603–04 (Ind.2000).

■ Baxter challenged this alleged error at his hearing on the motion to correct error. In an affidavit, one juror alleged that, after the jury had been deliberating six to seven hours, the bailiff was questioned regarding what would happen if the jury "hung." Allegedly, the bailiff told jurors "that [they] had not been there long enough and to not even think about that." This juror further stated that "[t]he exchange did not affect the verdict as far as I was concerned." The bailiff testified at the hearing on the motion to correct error that he had not made this statement at all.

The trial court found that the alleged comment was not made by the bailiff, and also concluded that, even if it had been made, there was no evidence that it had affected the verdict. The trial court's finding that no harm resulted to Baxter was not clearly erroneous.

## VI. Sufficiency of the Evidence

■ Baxter contends that the evidence was insufficient to convict him of murder. This Court will affirm the conviction if there is sufficient probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Garrett v. State*, 714 N.E.2d 618, 621 (Ind.1999). We do not reweigh the evidence or assess the credibility of the witnesses, *id.*, and we consider only the evidence that supports the verdict and the reasonable inferences to be drawn therefrom, *Harrison v. State*, 707 N.E.2d 767, 788 (Ind.1999).

■ In order to be found guilty of murder based on accomplice liability, a jury must find beyond a reasonable doubt that a defendant "knowingly or intentionally aid[ed], induce[d], or cause[d] another person to commit an offense." Ind.Code § 35–41–2–4 (1998). A defendant's mere presence at the crime scene, or lack of opposition to a crime, standing alone, is insufficient to establish accomplice liability. *See Harris v. State*, 425 N.E.2d 154, 156 (Ind.1981). These factors, however, may be considered in conjunction with a defendant's course of conduct before, during, and after the crime, and a defendant's companionship with the one who commits the crime. *See id.*

■ At trial, Williams testified that Woods was carrying a gun in his pocket on the day of the crime, that Woods was fumbling with his side in the back seat, and that Woods always carried a gun. Baxter reported that he had grown up with Woods, knew Woods better than the other passengers that night, and also knew that Woods had spent time in prison. Williams also testified that, at one point, he expressed concern about injuring another driver on the road, at which point everyone turned around. Woods responded, urging that the chase continue. Despite Williams' alleged urging to abandon the chase, Baxter continued in pursuit of Knoebel for seven to ten minutes. The jury was free to believe Williams' testimony, even if contradictory, tending to establish that Baxter was aware that Woods had a gun and wanted to fire it at Knoebel's van. The jury was also free to infer from Baxter's continued pursuit of the van that

he was guilty beyond a reasonable doubt of knowingly or intentionally aiding Williams in committing murder. Thus, the evidence was sufficient to uphold the verdict.

## VII. The Sentence

Baxter alleges that his sentence is manifestly unreasonable. Although this Court has the constitutional authority to revise and review sentences, *see* Ind. Const. art. VII, § 4, it will do so only when the sentence is "manifestly unreasonable in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 17(B). This Court's review under Rule 17(B) is very deferential to the trial court: "The issue is not whether in our judgment the sentence is unreasonable, but whether it is clearly, plainly, and obviously so." *Bunch v. State,* 697 N.E.2d 1255, 1258 (Ind.1998) (quoting *Prowell v. State,* 687 N.E.2d 563, 568 (Ind. 1997)).

We conclude that this is one of those cases. The record before the Court reveals that the nature of the offense, but more importantly, the character of the offender is such that sentencing him to the maximum term allowable is manifestly unreasonable. Throughout his adult life, Baxter held steady employment with his father and elsewhere up until shortly after the murder. Baxter's former girlfriend testified that Baxter provided economic and financial support to their son as well as played the role of father to her sons by another man. The record also shows that Baxter remained in close contact with his other child by his fiancée. Several friends and family members testified at the sentencing hearing to his "reputation for peacefulness," and to the support he had provided them over the years. Baxter also exhibited remorse for his role in Knoebel's murder, although he continued to maintain that he did not know Woods had a gun. Moreover, unlike the more typical accom-

plice to a crime, Baxter had no inkling at the outset of the evening that his association with Woods or Williams would result in any crime, much less one with these tragic consequences.

Finally, Baxter offered some explanation for his criminal history, which was the sole statutory basis for aggravating his sentence. Baxter had three arrests while he was a juvenile, one of which resulted in a conviction, and three as an adult, two resulting in convictions. None involved any violent offenses, and three of the arrests involved mistaken identifications. According to Baxter, his only conviction as a juvenile, for burglary and theft, consisted of entering an abandoned school through an open window. Baxter stated that he remembered the burglary part of the conviction, but not the theft, contending that nothing in the building was worth taking. The other two arrests were for fighting, but Baxter was released after it was determined that Baxter's twin brother had been in the fights.

As an adult, Baxter was first arrested and convicted for resisting law enforcement. According to Baxter, he was arrested with a group of people, believing he was rightfully where he was, when he kept walking after he was told to freeze. Second, he was arrested for resisting arrest, but charges were dismissed after it was determined the wrong person had been arrested. Finally, his last arrest came after he was in a home in which cocaine was found. He pleaded guilty to resisting law enforcement, a crime he claims he did not know he had committed, in exchange for authorities' dropping a charge for possession of cocaine. Baxter successfully completed probation for these misdemeanor convictions as an adult.

In view of Baxter's uncertain criminal history, the evidence submitted regarding Baxter's character, and Baxter's limited involvement in the murder of Knoebel,[5] it

**5.** *Cf. Widener v. State,* 659 N.E.2d 529, 534 (Ind.1995) (considering defendant's lack of

involvement in planning and initiating a mur-

was manifestly unreasonable to impose the maximum sentence allowable. We therefore remand to the trial court with instructions to reduce Baxter's sentence to the presumptive term of fifty-five years.[6]

### Conclusion

Baxter's conviction for murder is affirmed. This case is remanded to the trial court with instructions to reduce the sentence to fifty-five years.

SHEPARD, C.J., and RUCKER, J., concur.

SULLIVAN, J., concurs in parts I–VI and concurs in result in part VII.

DICKSON, J., dissents from the sentence reduction but otherwise concurs.

der and robbery, along with other factors, in reducing a sentence).

6. Baxter also argues that the trial court abused its discretion in failing to consider the mitigators presented in his sentencing submission. Because reduction of the sentence to the presumptive is the relief Baxter seeks on appeal, the conclusion that Baxter's sentence was manifestly unreasonable renders superfluous discussion of this issue.