Kenneth E. DIXON, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 73A04–0109–CR–409.

Court of Appeals of Indiana.

June 12, 2002.

David T. Page, Baker, Pittman, & Page, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Christopher C.T. Stephen, Depu-

ty Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Kenneth Dixon appeals his convictions for Operating a Vehicle While Intoxicated and Criminal Recklessness With a Vehicle, both Class A misdemeanors. We affirm.

### Issue

The sole issue for our review is whether Dixon was deprived of a fair trial because of ex parte communications between the jury foreman and the bailiff.

### Facts

The facts most favorable to the judgment show that on November 28, 2000, the State charged Dixon with Operating a Vehicle While Intoxicated, Operation of a Vehicle with .10 or More Alcohol in a Person's Body, and Criminal Recklessness With a Vehicle, all Class A misdemeanors, and Operation of a Vehicle while Intoxicated with a Prior Conviction, a Class D felony. In June 2001, the trial court conducted a bifurcated jury trial on the charges.

The jury found Dixon guilty of two of the charges. Dixon polled the jury, and each juror acknowledged that they found him guilty. Dixon then notified the trial court that he wished to enter into a plea as to the enhanced charge of Operating a Vehicle While Intoxicated With a Prior Conviction instead of proceeding with a jury trial on that charge. The trial court dismissed the jury before conducting the guilty plea hearing.

### Analysis

Dixon alleges that there was improper ex parte communication between the jury foreman and the bailiff that deprived him of his right to a fair trial.

When an improper communication takes place between the bailiff and the jury, "there [is] a presumption of harm to the defendant that the State must rebut to avoid reversal." *Baxter v. State*, 727 N.E.2d 429, 434–35 (Ind.2000) (quoting *Alexander v. State*, 449 N.E.2d 1068, 1074 (Ind.1983)). Reversal may be avoided only if no harm or prejudice to the defendant results. *Id.* (citing *Randall v. State*, 474 N.E.2d 76, 79 (Ind.1985) ("When an irregularity such as this . . . occurs harm will be presumed, and if the irregularity is not explained, a reversal of the judgment should follow. However, if an explanation for the alleged misconduct is offered, and if this Court is satisfied that no harm or prejudice resulted, then the judgment of the trial court will not be disturbed.") (citations omitted)). When the trial court has addressed the issue of improper communications, we do not reweigh its determinations as to the credibility of the witnesses. *Id.* Because this is a factual determination, it is subject to a clearly erroneous standard of review. *Id.*

Following the verdict, Dixon polled the jury, and each juror acknowledged that they had found him guilty. Dixon then pleaded guilty to the second phase of the trial, and the trial court dismissed the jury. Following a recess, the trial judge returned and stated that it had been brought to his attention that some remarks had been made between the jury and the bailiff. The trial court then called the bailiff and a security guard to testify as to what had occurred.

The bailiff testified that the jury foreman came to the door and told her that they were finished deliberating. The foreman asked the bailiff where to put the jury verdict forms. The bailiff told the foreman to put the final verdict form in the envelope and that she would inform the judge. The foreman mentioned specific

numbers of guilty and not guilty votes, to which the bailiff responded that the foreman should only put the final verdict form in the envelope. A security guard who overheard the interaction also testified that the foreman said they were finished, asked where to put the verdict form, and mentioned specific votes. The foreman then closed the door, and the bailiff returned to reiterate that only the final verdict was to be placed in the envelope.

Dixon cross-examined both the bailiff and the security guard. After the testimony, he moved to have the verdict set aside. He argued that there was a question regarding whether "the bailiff became confused as to whether the jury was split between guilty and not guilty votes, or if the foreman was unsure as to what to do with the jury's verdict forms." Appellant's Br. p. 5. He also claimed that the remark by the foreman may have indicated the jury's verdict was not unanimous. The trial court denied the motion, citing four reasons for finding no misconduct: 1) the comments were innocent and not related to the verdict; 2) the instructions on reaching a unanimous verdict were clear; 3) the trial court found that the verdict forms showed no indication of problems; and 4) Dixon had polled the jury.

We conclude that the findings of the trial court are supported by the evidence. The discourse between the foreman and the bailiff did not involve the facts of the case or any legal discussion, but was rather procedural in nature as to where the verdict form should be placed. The foreman announced that the jury was finished with deliberations before the bailiff provided instructions as to what should be done with the verdict form. Dixon polled the jury, and there is no evidence that the final verdict was anything other than unanimous. The fact that there were possibly some not guilty votes at some point in the jury's deliberations does not require reversal. The instructions were clear regarding the requirement that the final verdict be unanimous. We fail to see how the bailiff's brief interaction with the foreman prejudiced Dixon. *See Farris v. State,* 732 N.E.2d 230, 235 (Ind.Ct.App.2000) (finding no prejudice where the bailiff's response to the jury was similar to instructions the court would have provided and where the bailiff did not talk about the facts of the case, further instruct the jury, or discuss substantive legal matters with the jury); *Azania v. State,* 730 N.E.2d 646 (Ind.2000) (finding no harm because the ex parte communication occurred after the jury had completed deliberations).

Although we find no prejudice here, we are mindful of the disfavor this court has shown toward discussions between bailiffs and juries. We have cautioned:

> While we find that the error in this case was harmless, we do not mean to say that communication between a bailiff and the jury is appropriate. On the contrary, it is important that trial courts instruct bailiffs to refrain from communicating about the case with jurors. Further, when jurors ask questions of the bailiff, the bailiff's response should be limited to an indication that he will forward the question to the judge. We recognize that bailiffs have numerous opportunities to influence juries. Therefore, courts must be ever cautious to minimize those opportunities consistent with practicality. It is important that juries reach their decisions fairly and impartially. Likewise, it is of equal importance to maintain the integrity of the judicial system and avoid the appearance of partiality in the decision-making process. Consequently, while we find no prejudice here, we will continue to ex-

amine closely communication between bailiffs and juries.

*Farris,* 732 N.E.2d at 235.

### Conclusion

Because we find no prejudice resulting from the bailiff's brief conversation with the jury foreman, we affirm Dixon's convictions.

Affirmed.

KIRSCH, J., and MATHIAS, J., concur.