## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 09 2020, 7:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

James A. Hanson
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samuel J. Dayton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Geraldine Holliday,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

April 9, 2020

Court of Appeals Case No.
19A-CR-1170

Appeal from the Allen Superior Court

The Honorable Wendy Davis, Judge

The Honorable Samuel R. Keirns, Magistrate

Trial Court Cause Nos.
02D04-1808-F6-924
02D04-1812-F6-1500

**Shepard, Senior Judge.**

[1] Geraldine Holliday and her boyfriend Richard Bullock have had a tumultuous relationship that has produced a collection of domestic disturbance runs, no contact orders, criminal charges, re-arrests, and guilty pleas. Her appeal contends that all of these were either void ab initio or voidable as violations of due process or excessive. We affirm.

## Facts and Procedural History

[2] On April 17, 2018, Holliday and Bullock engaged in an argument that turned physical and concluded with Holliday breaking a window of Bullock's apartment with a brick. As a result of this incident, Holliday was charged with domestic battery. The court entered a pretrial no contact order (NCO) at Holliday's initial hearing as a condition of her release. Holliday signed the NCO acknowledging that she had read and understood it and that she had received a copy of it. The domestic battery charge was later dismissed.

[3] Late in the evening on the same day that Holliday was released from custody with regard to the brick incident, police were called to Bullock's apartment on report of a disturbance. Holliday was found in the apartment, and Bullock told the police there was an NCO in effect. The State charged Holliday with invasion of privacy. Holliday pleaded guilty to the charge at her initial hearing. She was released, and the court entered an NCO pending sentencing, which Holliday acknowledged reading, understanding, and receiving. As part of Holliday's sentence, the court issued an NCO for the term of her probation. Holliday signed a copy of this NCO, indicating she had read and understood

the order and that she understood that violation of the order may cause additional charges to be filed against her.

[4] As a result of the brick incident, the State also charged Holliday in a separate cause with criminal mischief.[1] Holliday pleaded guilty to this charge at her initial hearing, and the court entered an NCO as a condition of her release. The court provided Holliday with a copy of the NCO, which she signed to acknowledge her receipt, reading, and understanding. At Holliday's sentencing hearing a month later, the court entered an NCO as a condition of her probation, and Holliday again acknowledged reading and understanding the order, as well as understanding that violating it could result in additional charges.

[5] On August 1, 2018, police were dispatched to a church. When they arrived, they found Holliday and Bullock in the church parking lot drinking beer. The State charged Holliday with invasion of privacy, and an NCO was issued at her initial hearing. The order contains her signature indicating that she read, understood, and received a copy. The invasion of privacy charge was dismissed on August 7.

---

[1] Holliday has not included a copy of any documents from this case in her appendix. *Contra* Ind. Appellate Rule 50(B)(1)(a) (stating the appellant's appendix in a criminal appeal *shall* contain "the Clerk's Record, including the chronological case summary[.]"). Pursuant to Indiana Evidence Rule 201, however, we have taken judicial notice of the records of the court below necessary to inform our decision.

[6]   On the same day, the State charged Holliday with Level 6 felony invasion of privacy[2] in F6-924 for her violation of the NCO on August 1. At her initial hearing, the court issued an NCO against Holliday to remain in effect during the pendency of the cause. As before, she signed the order to acknowledge that she had read, understood, and received a copy.

[7]   In December 2018, officers were dispatched to a residence concerning a report of a domestic dispute. The officers made contact with Holliday who had slurred speech and a strong odor of alcoholic beverages. She indicated that she and Bullock had been drinking and had engaged in a physical altercation. She was charged in F6-1500 with another offense of felony invasion of privacy for violating the NCO issued by the court in F6-924.

[8]   In April 2019, the court held a bench trial in both F6-924 and F6-1500 and found Holliday guilty as charged on both counts. The court sentenced Holliday to one year in F6-924 and to two years suspended to probation in F6-1500.

## Issues

[9]   Holliday presents at least eight issues, which we consolidate and restate as two:

    I.     Whether Holliday was denied due process in the course of the issuance of the no contact orders; and

---

[2] Ind. Code § 35-46-1-15.1 (2018).

> II. Whether the no contact orders issued against Holliday constitute excessive bail.

# Discussion and Decision

## I. Due Process

Holliday contends that the pretrial NCOs issued at her initial hearings were issued without due process because she had neither the assistance of counsel nor an opportunity to be heard. She also alleges the NCOs were issued without any supporting evidence. Appellant's Br. p. 21.

At an initial hearing in a criminal case, our state requires the judicial officer to inform the defendant of the nature of the charge and her various rights, including that she has a right to counsel at no expense if she is indigent and the amount and conditions of bail. *See* Ind. Code § 35-33-7-5 (2019). Further, if a defendant requests counsel and is found to be indigent, the judicial officer shall assign counsel prior to the completion of the initial hearing. Ind. Code § 35-33-7-6 (2004). Included in Indiana's statutory scheme for preliminary proceedings is Indiana Code section 35-33-8-3.2 (2018). This section provides that, as a condition of bail, the trial court may require the defendant to refrain from contact with an individual upon a showing of clear and convincing evidence that the defendant poses a risk of physical danger to another person or the community.

With regard to these procedures, our Supreme Court has stated that "[a]n initial hearing conducted under Indiana's statutory scheme is not a critical stage of the

criminal proceeding requiring the presence of counsel." *Hopper v. State*, 957 N.E.2d 613, 616-17 (Ind. 2011) (citing *Benner v. State*, 580 N.E.2d 210 (Ind.1991)).

[13] As part of the preliminary proceedings, the pretrial NCOs were entered against Holliday at her initial hearings. The State tendered affidavits of probable cause providing evidence of Holliday's violence toward Bullock to support the issuance of the NCOs. The courts could well have found this evidence adequate to sustain entry of the pretrial NCOs under Section 35-33-8-3.2. We have no evidence before us that the trial courts issuing the NCOs failed to follow the statutory scheme with regard to any of the preliminary proceedings or that their actions violated Holliday's due process under these circumstances.

[14] Further, any concerns Holliday may have possessed remained ripe for objections and motions at a later date, and it appears that at the various stages of the proceedings Holliday had counsel who could have challenged the entry of the NCOs. However, at no point in the proceedings in which the NCOs were entered did Holliday ever challenge their entry or suggest that their entry violated her due process rights.

[15] Thus, Holliday's contentions are nothing more than an attempt to collaterally attack the validity of the NCOs that were issued in prior proceedings. As we stated, in none of those proceedings did Holliday ever object to the entry of the NCOs on any grounds, nor did she appeal to challenge their validity after they were imposed. Instead, she repeatedly and willfully disregarded the terms of

the NCOs and waited until charges were brought in subsequent, separate causes to first assert that her rights had been violated. Consequently, she is precluded from challenging the validity of the NCOs.

[16] Finally, contrary to the bulk of Holliday's argument, we note that the right to interact with others is not without limitation. In Justice Jackson's well-known words, the Constitution is not "a suicide pact." *Terminiello v. City of Chicago*, 337 U.S. 1, 37 (1949) (dissenting opinion). The Constitution itself takes account of state interest and public necessity. For example, individuals may interact, but an individual may not batter, stalk, harass, or intimidate another individual. *See, e.g.*, Ind. Code §§ 35-42-2-1 (2018), 35-42-2-1.3 (2019), 35-45-10-1 (1993), 35-45-2-2 (1996), 35-45-2-1 (2019).

## II. Excessive Bail or Punishment

[17] Our conclusion above that Holliday's assertions amount to an improper collateral attack on orders issued in prior proceedings applies equally here. Nonetheless, we are compelled to note, first, that Holliday claims the pretrial NCOs constitute excessive bail. However, as we stated above, the right to interact with others is not without its limits.

[18] Second, the Indiana Constitution prohibits excessive bail. IND. CONST. art. I, § 16. "Bail may not be set higher than that amount reasonably required to assure the defendant's appearance in court or *to assure the physical safety of another person*" if the court finds that the defendant poses a risk to the physical safety of another person. Ind. Code § 35-33-8-4 (b) (2017) (emphasis added). Holliday

makes no showing, and we cannot rationally find, based on the facts presented here, that ordering her to have no contact with Bullock was excessive bail.

# Conclusion

[19] We conclude Holliday was afforded due process and that her bail was not excessive.

[20] Affirmed.


Najam, J., and Tavitas, J., concur.