Ex parte David William FIFE.

No. 2–00–422–CR.

Court of Appeals of Texas,
Fort Worth.

April 12, 2001.

Philips, Hopkins, Eames, Cobb & Cartwright; Jerry Cobb, Denton, Attorney for Appellant.

Bruce Isaacks, Criminal District Attorney; Kathleen A. Walsh, Denver McCarty, and Lori Moraine, Assistant District Attorneys, Denton, Attorneys for Appellee.

PANEL B: LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

## OPINION

LIVINGSTON, Justice.

In this habeas corpus proceeding we are asked to decide whether the trial court erred in sua sponte granting a mistrial because of the prosecutor's violation of "the Rule" of sequestration by questioning witnesses previously placed under the Rule while in each other's presence. Because we have determined the trial court erred in granting the mistrial on its own, we reverse the trial court's denial of appellant's habeas relief.

### Facts

Appellant was charged with possession of a controlled substance with intent to distribute it. At the conclusion of voir dire, but before the State's opening statement, the court placed the witnesses under the Rule. *See* TEX.R.EVID. 614. Appellant entered his plea of not guilty before the jury on Tuesday, June 20, 2000. That same day, the State presented its opening statement. During the State's opening, the prosecutor mentioned some exculpatory evidence that had not been made available to the appellant prior to trial. Because of this, appellant moved for a mistrial and, alternatively, sought and obtained a two-day continu-

ance to review and investigate the evidence the court ordered the State to provide.

The court held a hearing on the motion for mistrial on the morning of Thursday, June 22, the day the trial was supposed to resume. The court denied appellant's motion for mistrial based on the State's failure to disclose exculpatory evidence. Appellant also moved to suppress the evidence seized from appellant's residence because of the newly disclosed exculpatory evidence that showed some inconsistencies with regard to the timing of the warrants.[1] The trial court withheld its ruling on the motion to suppress and said it would carry it through the trial and rule on it after all the evidence had been presented.

During the hearing on the motion to suppress the undisclosed evidence, one of the State's prosecutors left the courtroom to go out and discuss the signing and the timing of the search warrant for appellant's residence while in the presence of other investigators who were also under the Rule.

Appellant's counsel complained that the violation of the Rule by the officers who will have to testify as to the timing of the warrant and the delivery, goes to the very heart of appellant's motion to suppress. The court then questioned the prosecution about what had transpired:

THE COURT: Mr. McCarty?

MR. McCARTY: I just went and inquired what had happened with the warrant getting signed.

THE COURT: So you inquired about the facts that were just brought to your attention that they were pertinent facts while all the officers were present and could hear each other's responses?

MR. McCARTY: Not all of them. Just DEA.

THE COURT: While more than one officer was present and could hear their responses?

MR. McCARTY: Yes, sir.

THE COURT: Any reason I shouldn't grant a mistrial for that?

MR. McCARTY: I think it's harmless, Judge.

MR. COBB: It's not harmless on this fact issue, Judge, as you well know.

MR. McCARTY: I didn't tell them what to say. I said, Tell me what happened.

THE COURT: Right. So one officer could hear what the other officer is going to testify to on a fact that's pertinent after the rule's been invoked. Is that a fair assessment of it?

MR. McCARTY: Yes, sir.

THE COURT: Motion for mistrial is granted. You'll pick a new date.

And after the court brought the jury back in, the trial judge explained the mistrial to the jury as follows:

THE COURT: ... I've declared a mistrial ... on some legal basis on evidence that was and wasn't known to each side and those sort of things.

. . . .

What one person knew and the other person didn't know and who should have given who what ahead of time.

---

1. This timing was the critical fact issue to support appellant's motion to suppress. Specifically, as the court noted, part of the probable cause upon which the affidavit was based, was that the drugs had already been delivered in a controlled delivery. The warrant was signed at 10:48 a.m. However, a police report shows the delivery was not made until 11:15 a.m.

Subsequently, appellant sought habeas corpus relief from the trial court's order, which was denied.

## Issues Presented

Appellant challenges the trial court's denial of his application for habeas corpus relief on two points. He contends failure to dismiss the cause constitutes a violation of the double jeopardy clause under the Texas and United States Constitutions and that under the Texas Constitution double jeopardy would bar a retrial under *Bauder v. State*, 921 S.W.2d 696 (Tex.Crim.App. 1996) because of the prosecutor's misconduct. The State contends that appellant consented to the mistrial so his retrial could not be in violation of either constitutions' double jeopardy protections and that his retrial was not barred by *Bauder* because the mistrial was not requested by appellant.

## Double Jeopardy Protections

■ The double jeopardy clause of the United States Constitution provides that no person shall be subjected to twice having life or limb in jeopardy for the same offense. U.S. CONST. amend. V. This clause protects against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *United States v. Dixon*, 509 U.S. 688, 695–96, 113 S.Ct. 2849, 2855–56, 125 L.Ed.2d 556 (1993); *Ex parte Herron*, 790 S.W.2d 623, 624 (Tex.Crim.App.1990) (op. on reh'g).

■ In a jury trial, jeopardy attaches when the jury is impaneled and sworn in to try the case. *Crist v. Bretz*, 437 U.S. 28, 37, 98 S.Ct. 2156, 2162, 57 L.Ed.2d 24 (1978); *Ex parte Little*, 887 S.W.2d 62, 64 (Tex.Crim.App.1994). When a trial court grants a defendant's motion for mistrial, the double jeopardy clause is not violated unless conduct giving rise to the motion was intended to provoke the defendant into moving for a mistrial. *Oregon v. Kennedy*, 456 U.S. 667, 673, 102 S.Ct. 2083, 2088, 72 L.Ed.2d 416 (1982); *Bauder*, 921 S.W.2d 696, 697 (Tex.Crim.App.1996).

■ However, when a trial court grants a mistrial without a defendant's consent, retrial will be barred by double jeopardy unless manifest necessity to grant the mistrial is shown. *Harrison v. State*, 767 S.W.2d 803, 806 (Tex.Crim.App.1989). *But see Ex parte Bauder*, 974 S.W.2d 729, 731–32 (Tex.Crim.App.1998) (where trial court grants a mistrial due to prosecutorial misconduct, test is not whether trial court would have abused its discretion by denying motion for mistrial, but whether appellant truly consented to the mistrial). *See generally Brown v. State*, 907 S.W.2d 835, 838–41 (Tex.Crim.App.1995).

## Does *Bauder* Apply to a Trial Court's Sua Sponte Declaration of a Mistrial?

■ In *Bauder v. State*, the court of criminal appeals determined that when a defendant is forced to seek a mistrial due to a prosecutor's misconduct, either when the prosecutor intends to cause a retrial or when a prosecutor is aware but consciously disregards the risk of a potential mistrial, retrial violates double jeopardy protections. *Bauder*, 921 S.W.2d at 699 ("*Bauder I*"). In other words, we may not presume a defendant automatically waives his double jeopardy protections by seeking a mistrial; we must look at the facts that precipitated the mistrial and, if a defendant had no other recourse or remedy other than a mistrial, double jeopardy will prevent retrial.

■ In *Ex parte Bauder*, the court clarified its first opinion and placed greater emphasis on whether the defendant re-

tained his right to control his trial and on whether the defendant truly consented to the mistrial. *Ex parte Bauder*, 974 S.W.2d at 732 (*"Bauder II"*). "The question is not the correctness of the ruling granting the mistrial." *Id.* at 731. In other words, the defendant's

> motion for mistrial was a choice he made in response to ordinary reversible error in order to avoid conviction, appeal, reversal, or retrial. Or, on the other hand, was he required to move for mistrial because the prosecutor deliberately or recklessly crossed "the line between legitimate adversarial gamesmanship and manifestly improper methods" . . . that rendered trial before the jury unfair to such a degree that no judicial admonishment could have cured it[.]

*Id.* at 729; *see also State v. Lee*, 15 S.W.3d 921, 923 (Tex.Crim.App.2000).

■ The State contends that since appellant did not seek the mistrial, *Bauder* does not apply. We do not agree entirely. The focus of the *Bauder* test should not be blindly limited to only those cases where the appellant makes a calculated choice to seek a mistrial because no other remedy will suffice. As in *Bauder II* the focus should be on whether the defendant truly consented to the mistrial. *Ex parte Bauder*, 974 S.W.2d at 732. Two of our sister courts have adopted similar positions. *See generally George v. State*, 41 S.W.3d 241 (Tex.App.—Waco 2001, no pet. h.); *Vasquez v. State*, 22 S.W.3d 28 (Tex.App.—Amarillo 2000, no pet.).

■ In this case, appellant did not request a mistrial because of the violation of the Rule. He contends there were other, more suitable remedies available to him and, had the judge not sua sponte declared a mistrial, he would have pursued those remedies. We agree. And this is particularly true where the error was not committed in front of the jury. Nevertheless, the State says the appellant failed to object to the court's mistrial and therefore consented to it.

## Did Appellant Consent to the Mistrial?

■ Once jeopardy attaches, a defendant has the right to have his guilt or innocence determined by the first trier of fact. *Torres v. State*, 614 S.W.2d 436, 441 (Tex.Crim.App. [Panel Op.] 1981). But if the defendant consents to a mistrial or if the mistrial is mandated by some form of manifest necessity, the second prosecution will not be barred. *Id.* The State contends appellant consented to the mistrial because he failed to object once the court announced the mistrial and failed to offer alternative remedies to the court. While both parties agree there was no manifest necessity for granting the mistrial, appellant also contends he neither requested nor consented to the mistrial. He claims it would have been much more advantageous for him to have the testimony excluded because if the officers' testimony was excluded, his motion to suppress would have been granted and he would have been found not guilty.

The State argues that appellant missed his opportunity to object when the trial judge asked the parties if there was any reason he should not grant a mistrial. The State replied that the violation of the Rule was harmless. Appellant complained that the violation of the Rule was harmful, although he did not object or complain about the possibility of the mistrial. We must, however, remember the context of this exchange: appellant's motion for mistrial based upon the failure to disclose evidence by the prosecution had just been denied. The court had moved on to a discussion of appellant's motion to suppress. The hearing on the motion to suppress would encompass the very testimony of the officers who had violated the Rule due to the pros-

ecutor's inquiry. While there was much confusion regarding which matter they were hearing, it is obvious that the success of appellant's hearing on the motion to suppress was potentially outcome determinative. It is just as likely that appellant's statement, "It's not harmless, Judge" was a further argument in support of his suppression motion. We believe this is an insufficient indication of appellant's consent. In such a case, we are unwilling to imply consent as we did in *Garner v. State*, 858 S.W.2d 656, 658 (Tex.App.—Fort Worth 1993, pet. ref'd).

In *Garner* consent was implied after the parties held a conference in chambers on a potential mistrial and the court stated its reasons for the grant of the mistrial on the record. *Id.* at 658–59. Here, there was no in-chambers discussion and the court's statement as to the reasons for the mistrial were not articulated to the parties until after the jury returned. Interestingly, the trial court told the jury it granted the mistrial because of withheld evidence, not the violation of the Rule. Because we cannot imply appellant's consent to the mistrial under these circumstances, we hold the trial court's preemptive grant of a mistrial was not the result of manifest necessity and was error. *See Ex parte Primrose*, 950 S.W.2d 775 (Tex.App.—Fort Worth 1997, pet. ref'd). Because jeopardy had attached at the time the court granted the mistrial, appellant has lost his right to have his guilt or innocence determined before the first jury selected. U.S. CONST. amend. V; TEX. CONST. art. 1, § 14; *Oregon*, 456 U.S. at 673, 102 S.Ct. at 2088.

 Because we determine that the error is constitutional, we apply appellate rule 44.2(a) in conducting a harm analysis. TEX.R.APP.P. 44.2(a). The question is whether the trial court's sua sponte grant of a mistrial was harmless beyond a rea-

sonable doubt. *See Williams v. State*, 958 S.W.2d 186, 194 (Tex.Crim.App.1997).

 Because the prosecutor's misconduct precipitated this unnecessary mistrial and jeopardy had already attached, appellant was denied the right to have the first jury hear his case. For these reasons, we reverse and remand with instructions to the trial court to dismiss the case.