The STATE of Texas, Appellant,

v.

Malcolm Delshaun MANLEY, Eric Deshun Lewis, Kevin Dale Brown, Jr., and Brandon Ratcliff, Appellees.

Nos. 10–05–00341–CR to 10–05–00344–CR.

Court of Appeals of Texas, Waco.

Feb. 7, 2007.

---

James M. Kuboviak, County Atty. for Brazos Atty., Bryan, for appellant.

Brad K. Cune, Bruce L. Errant, Jerry L. Gribble, Bryan, Laura L. Cass, Albuquerque, NM, for appellees.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

The State appeals the trial court's dismissal of these four cases on speedy trial grounds. The State argues in its sole issue that the court erred by dismissing the cases because: (1) the length of delay in trying Appellees was not unreasonable; (2) legitimate reasons exist for the delay; (3) Appellees did not promptly assert their speedy trial rights; and (4) Appellees did not suffer prejudice from the delay. We will affirm.

## Background

Arrest warrants were issued for each of the Appellees for his alleged participation in a misdemeanor assault in September 2002. Malcolm Delshaun Manley and Kevin Dale Brown, Jr. were arrested in October 2002, Eric Deshun Lewis was arrested

in March 2003, and Brandon Ratcliff was arrested in January 2004. The court granted the State's motion for a joint trial as to all four defendants, and a jury trial was held in June 2004. However, the court declared a mistrial on the third day of trial at the defendants' request because of the discovery of potentially exculpatory evidence which the State had not previously disclosed.

Lewis filed a motion to dismiss on speedy trial grounds in October 2004. The court heard Lewis's motion in December 2004 but deferred a ruling, allowing the State an opportunity to review the matter further and respond as appropriate. The court scheduled the matter for another hearing in January 2005, which apparently never occurred, and for trial in February 2005. The parties were notified on July 12, 2005 of a preferential trial setting for August 22, 2005. The other Appellees filed dismissal motions on speedy trial grounds three days before this August trial setting. The court granted all four dismissal motions after a hearing that same day.

### Applicable Law

■ "[W]e apply a bifurcated standard of review: an abuse of discretion standard for the factual components, and a *de novo* standard for the legal components." *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim.App.2002). Because the court granted Appellees' speedy trial motions, we

must presume that the court resolved any disputed fact issues in Appellees' favor, and we must defer to any implied findings supported by the record. *Id.* We "must uphold the trial court's ruling if it is supported by the record and is correct under the applicable law." *Shaw v. State*, 117 S.W.3d 883, 889 (Tex.Crim.App.2003).

■ We balance four non-exclusive factors when considering a speedy trial claim: (1) the length of the delay; (2) the reasons for the delay; (3) the timeliness of the assertion of the right to a speedy trial; and (4) any prejudice caused by the delay. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972); *Shaw*, 117 S.W.3d at 888–89; *Shea v. State*, 167 S.W.3d 98, 102 (Tex.App.-Waco 2005, pet. ref'd).

### Effect of Joint Prosecution

The fact that the State chose to prosecute the Appellees in a single trial raises at least two issues: (1) whether the "speedy trial clock" should begin at the same time for all four of them even though they were arrested at different times; and (2) whether delays attributable to any one of them should be attributable to the others. Because our research discloses no Texas cases addressing the effect of a joint prosecution on a speedy trial claim, we will look to other jurisdictions for guidance.[1]

---

1. The Court of Criminal Appeals has reviewed at least two cases involving speedy trial claims in which some of the delay involved a co-defendant who was *not* tried jointly with the defendant whose case was under review. In *County v. State*, the Court overruled a speedy trial claim because, among other reasons, "appellant and his counsel agreed to a large part if not all of the delay in that they wished to see appellant's co-indictee tried first." 668 S.W.2d 708, 711 (Tex.Crim.App. 1984). In *Deeb v. State*, the appellant's trial was delayed in part because Deeb's co-defen-

dant was tried first. 815 S.W.2d 692, 705–06 (Tex.Crim.App.1991). Deeb "attempted to establish that this was purely a decision by the State." *Id.* at 706. However, the Court rejected this assertion stating, "It is difficult to conclude from the record that the State was maneuvering for a tactical advantage and was therefore responsible for the delay." *Id.* The Court concluded that this was a "neutral reason for the delay" which "should be weighed less heavily" against the State. Id. (citing *Barker v. Wingo*, 407 U.S. 514, 531, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972)).

According to federal decisions, there is only one "speedy trial clock" in cases involving multiple defendants which does not begin to run until the commencement of the "clock" applicable to the most recently added defendant. *See Henderson v. United States,* 476 U.S. 321, 323 n. 2, 106 S.Ct. 1871, 1873 n. 2, 90 L.Ed.2d 299 (1986); *United States v. Gambino,* 59 F.3d 353, 362 (2d Cir.1995); *United States v. Piteo,* 726 F.2d 50, 52 (2d Cir.1983). These decisions are grounded in the federal Speedy Trial Act, which contains a specific provision governing joint trials. Title 18, section 3161(h)(7) excludes from speedy trial calculations:

> A reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted.

18 U.S.C.S § 3161(h)(7) (LexisNexis 1993).[2]

Numerous states have enacted speedy trial laws with identical or substantially similar provisions.[3] *See* Alaska R.Crim. P. 45(d)(5); Ark. R.Crim. P. 28.3(g); Colo. Rev.Stat. Ann. § 18–1–405(6)(c); Colo. R.Crim. P. 48(b)(6)(III); Conn. Practice Book § 43–40(4); Fla. R.Crim. P. 3.191(*l*)(5); Haw. R. Pen. P. 48(c)(7); Mass. R.Crim. P. 36(b)(2)(E); Mich. R.Crim. P. 6.004(C)(5); Neb.Rev.Stat. § 29–1207(4)(e); N.Y. Pen. Law § 30.30(4)(d); S.D. Codified Laws § 23A–44–5.1(4)(e); *see also* Unif. R.Crim. P. 722(f)(13), 10 U.L.A. 203–

04 (2001). Oklahoma by comparison permits delay if "the accused is charged as a codefendant or co-conspirator and the court has determined that the codefendants or co-conspirators must be tried before separate juries taken from separate jury panels." Okla. Stat. § 812.2(A)(2)(f).

The State of New York has adopted the federal approach regarding when the speedy trial clock begins to run in cases involving multiple defendants. *See People v. Barnett,* 135 Misc.2d 1127, 517 N.Y.S.2d 849, 850–51 (Crim.Ct.1987) (construing N.Y. Pen. Law § 30.30(4)(d)). Conversely, the State of Ohio, which does not have a comparable statutory exclusion, has rejected this approach. See *State v. Leadingham,* 1989 WL 62873, at *3, 1989 Ohio App. LEXIS 2242, at *5–7 (Ohio Ct.App. 1989).

Like Ohio and many other states, Texas does not have a statutory exclusion comparable to that found in the federal Speedy Trial Act for delays attributable in some manner to the State's attempt to jointly try co-defendants. In addition, a slight majority of states and the District of Columbia have concluded that, for a Sixth Amendment speedy trial claim, delays attributable to a co-defendant are not weighed against the defendant, particularly if the defendant objects to any delays sought by a co-defendant. *See Kelley v. State,* 568 So.2d 405, 410 (Ala.Crim.App. 1990); *Sanchez v. Super. Ct. of Los Ange-*

---

**2.** The federal act was enacted in 1974 and was derived from speedy trial standards first approved by the American Bar Association in 1968. *See* ABA Standards for Criminal Justice: Speedy Trial and Timely Resolution of Criminal Cases, at 19 (3d ed. 2004) (Introduction to Standards); *see also* Standards Relating to Speedy Trial § 2.3(g) (1968).

**3.** Texas enacted a similar statute in 1977, article 32A.02, section 4(8) of the Code of Criminal Procedure. *See* Act of May 23,

1977, 65th Leg., R.S., ch. 787, § 1, 1977 Tex. Gen. Laws 1970, 1971. However, the Court of Criminal Appeals declared article 32A.02 unconstitutional in violation of the separation of powers doctrine as expressed in article II, section 1 of the Texas Constitution. *See Meshell v. State,* 739 S.W.2d 246, 257 (Tex.Crim. App.1987). The Legislature repealed this statute in 2005. *See* Act of May 29, 2005, 79th Leg., R.S., ch. 1019, § 2, 2005 Tex. Gen. Laws 3464, 3464.

les County, 131 Cal.App.3d 884, 182 Cal. Rptr. 703, 708 (1982); *State v. Ellis*, 1987 WL 8701, at *2, 1987 Del.Super. LEXIS 1038, at *6 (Del.Super.Ct.1987); *Hartridge v. United States*, 896 A.2d 198, 210 (D.C. 2006); *Jackson v. State*, 272 Ga. 782, 534 S.E.2d 796, 800 (2000); *State v. Winters*, 690 N.W.2d 903, 909–10 (Iowa 2005); *Epps v. State*, 276 Md. 96, 345 A.2d 62, 75–76 (1975); *Flores v. State*, 574 So.2d 1314, 1322 (Miss.1990); *contra Lee v. State*, 684 N.E.2d 1143, 1146 (Ind.1997); *Kelly v. Richardson*, 469 S.W.2d 700, 700 (Ky. 1971); *State v. Gale*, 526 So.2d 861, 864 (La.Ct.App.1988); *State v. Smith*, 2004–Ohio–6062, at ¶ 20 (Ohio Ct.App.2004); *Commonwealth v. Kimbrough*, 872 A.2d 1244, 1260 (Pa.Super.Ct.2005); *State v. Dukes*, 256 S.C. 218, 182 S.E.2d 286, 288 (1971).

A minority of states with speedy trial statutes have similarly concluded that delays attributable to a co-defendant are not weighed against the defendant, particularly if the defendant objects to any delays sought by a co-defendant. *People v. Abeyta*, 195 Colo. 338, 578 P.2d 645, 646 (1978); *Miner v. Westlake*, 478 So.2d 1066, 1067 (Fla.1985); *People v. Roberts*, 133 Ill. App.3d 731, 88 Ill.Dec. 773, 479 N.E.2d 386, 390 (1985); *State v. McDonald*, 718 So.2d 542, 545 (La.Ct.App.1998); *Flores*, 574 So.2d at 1321; *State v. Anthony*, 448 A.2d 744, 748 (R.I.1982). Consistent with this position, courts in at least five states have concluded that delays attributable to a co-defendant should be weighed against a defendant who either joined in the co-defendant's requested delay or failed to object. *See Hicks v. State*, 340 Ark. 605, 12 S.W.3d 219, 222–23 (2000); *State v. Faalafua*, 67 Haw. 335, 686 P.2d 826, 829–30 (1984); *State v. Campbell*, 104 Idaho 705, 662 P.2d 1149, 1154 (1983); *People v. Fluellen*, 160 A.D.2d 219, 553 N.Y.S.2d 670, 672 (N.Y.App.Div.1990); *State v. Morrison*, 1995 WL 723031, at *2–3, 1995 Ohio

App. LEXIS 5352, at *5–6 (Ohio Ct.App. 1995). At least five other states apparently take the position that delays attributable to a co-defendant should not be weighed against the prosecution or are otherwise justified under those states' respective speedy trial statutes, regardless of whether there is an objection. *See State v. Hankins*, 141 Ariz. 217, 686 P.2d 740, 745 (1984); *Randall v. State*, 474 N.E.2d 76, 84 (Ind.1985); *Commonwealth v. Long*, 367 Pa.Super. 190, 532 A.2d 853, 855 (1987); *State v. Dent*, 123 Wash.2d 467, 869 P.2d 392, 401–02 (1994); *State v. Johnson*, 188 Wis.2d 602, 526 N.W.2d 279, 1994 WL 564649, at *2, 1994 Wisc.App. LEXIS 1271, at *8–9 n. 4 (Wisc.Ct.App.1994) (per curiam).

The *McDonald* decision rendered by the Second Circuit Court of Appeals for Louisiana appears to conflict with that of its sister court, the Fourth Circuit Court of Appeals, in *Gale*. Compare *McDonald*, 718 So.2d at 545, *with Gale*, 526 So.2d at 864. Conversely, the Mississippi Supreme Court applied the same reasoning to both its Sixth Amendment speedy trial analysis and its statutory analysis. *See Flores*, 574 So.2d at 1321–22. Disregarding these decisions, we presume that the remaining four states with speedy trial statutes (Colorado, Florida, Illinois, and Rhode Island) which have determined that delays attributable to a co-defendant are not weighed against the defendant would reach the same conclusion if presented with a Sixth Amendment speedy trial claim under these circumstances. *See Abeyta*, 578 P.2d at 646; *Miner*, 478 So.2d at 1067; *Roberts*, 88 Ill.Dec. 773, 479 N.E.2d at 390; *Anthony*, 448 A.2d at 748.

■ We agree with these decisions and hold that, when co-defendants are joined for trial, delays attributable to one defendant are not attributable to the co-defen-

dants who object to those delays. *See Kelley,* 568 So.2d at 410; *Sanchez,* 182 Cal.Rptr. at 708; *Abeyta,* 578 P.2d at 646; *Ellis,* at *2, 1987 Del.Super. LEXIS 1038, at *6; *Hartridge,* 896 A.2d at 210; *Miner,* 478 So.2d at 1067; *Jackson,* 534 S.E.2d at 800; *Roberts,* 88 Ill.Dec. 773, 479 N.E.2d at 390; *Winters,* 690 N.W.2d at 909–10; *Epps,* 345 A.2d at 75–76; *Flores,* 574 So.2d at 1322; *Anthony,* 448 A.2d at 748; *accord Hicks,* 12 S.W.3d at 222–23; *Faalafua,* 686 P.2d at 829–30; *Campbell,* 662 P.2d at 1154; *Fluellen,* 553 N.Y.S.2d at 672; *Morrison,* at *2, 1995 Ohio App. LEXIS 5352, at *5–6.

■ We likewise hold, consistent with the Ohio Court of Appeals, that each defendant's "speedy trial clock" begins to run on the date of the defendant's arrest or the presentment of an indictment or information against that defendant, whichever occurs earlier, regardless of whether the State seeks to try the defendant jointly with a co-defendant. *See Shaw,* 117 S.W.3d at 889; *Shea,* 167 S.W.3d at 102 n. 1; *see also Leadingham,* 1989 WL 62873, at *3, 1989 Ohio App. LEXIS 2242, at *5–7.

Applying these principles, we now examine the *Barker* factors.

### Length of Delay

■ The length of delay is "a triggering mechanism" for consideration of the remaining factors. *Barker,* 407 U.S. at 530, 92 S.Ct. at 2192; *Shaw,* 117 S.W.3d at 889; *Shea,* 167 S.W.3d at 102. The delay is measured from the date of arrest or the filing of the information, whichever occurs first, to the date of trial. *See Shaw,* 117 S.W.3d at 889; *Shea,* 167 S.W.3d at 102 n. 1. A delay of one year is "unreasonable enough to trigger the *Barker* enquiry." *Doggett v. United States,* 505 U.S. 647, 652 n. 1, 112 S.Ct. 2686, 2691 n. 1, 120 L.Ed.2d

520 (1992); *accord Shaw,* 117 S.W.3d at 889.

Perhaps it could be argued that the grant of the defendants' request for mistrial should operate to start afresh the "speedy trial clock." However, the "clock" continues to run until the commencement of a trial which concludes with a verdict or other final disposition. *See, e.g., Shaw,* 117 S.W.3d at 889 (calculating length of delay from date of indictment to commencement of second trial after first trial had ended with declaration of mistrial).

For Manley and Brown, the length of delay was thirty-four months. For Lewis, it was twenty-nine months. And for Ratcliff, it was nineteen months. Thus, the delays are sufficient to require consideration of the remaining factors. *See Doggett,* 505 U.S. at 652 n. 1, 112 S.Ct. at 2691 n. 1; *Shaw,* 117 S.W.3d at 889.

### Reasons for the Delay

■ "The State has the burden of justifying the delay." *Shaw,* 117 S.W.3d at 889 n. 3. Different weights are assigned to the various reasons for the delay asserted by the State. *Id.* at 889.

The reasons for delay are similar in all four cases, although some of the cases present unique reasons applicable to only that particular case. The State cites the following reasons to justify the delay:

- "the great difficulties inherent in scheduling four cases and four attorneys, thru arraignment, pre-trials, docket calls, final pre-trials, discovery, motions, and trial";

- a crowded trial court docket which resulted in the trial court passing over these cases on several occasions to try other cases;

- continuance motions filed by Manley and Brown;

- Lewis's decision to accept then later reject a plea bargain;
- an October 2003 reset obtained by Lewis's counsel for maternity leave; and
- the mistrial.

■ "[A] crowded court docket is not a valid reason for delay and must be counted against the State, although not heavily." *Shaw*, 117 S.W.3d at 890. The State requested a joint trial which the court granted over Appellees' objections. Thus, any scheduling difficulties (and corresponding delays) arising from the State's tactical decision to try Appellees together must also be weighed against the State. *See Kelley*, 568 So.2d at 410; *Sanchez*, 182 Cal.Rptr. at 708; *Abeyta*, 578 P.2d at 646; *Ellis*, 1987 WL 8701, at *2, 1987 Del.Super. LEXIS 1038, at *6; *Hartridge*, 896 A.2d at 210; *Miner*, 478 So.2d at 1067; *Jackson*, 534 S.E.2d at 800; *Roberts*, 88 Ill.Dec. 773, 479 N.E.2d at 390; *Winters*, 690 N.W.2d at 909–10; *Epps*, 345 A.2d at 75–76; *Flores*, 574 So.2d at 1322; *Anthony*, 448 A.2d at 748.

The court granted a continuance motion filed by Brown which resulted in a one-month delay in his case.[4] The court granted two continuance motions filed by Manley which resulted in three months' delay in his case. Brown's motion and Manley's first motion were filed and granted before the State filed its motion for joint trial, and these motions were not served on the other co-defendants. Thus, Lewis and Ratcliff had no opportunity or reason to object to these continuance motions, nor did Brown or Manley have opportunity or reason to object to each other's motion. Manley's second continuance motion was filed after the court granted the State's motion for joint trial. However, Manley did not serve copies of this motion on his co-defendants. Thus, they did not have opportunity to object to Manley's second continuance motion. Accordingly, the delays attributable to Brown's continuance motion should be weighed against Brown, and the delays attributable to Manley's continuance motions should be weighed against Manley, but none of these delays should be weighed against Lewis and Ratcliff. *Id.*

The "maternity continuance" sought by Lewis's counsel resulted in a five-month delay. However, there is no indication in the record that any of Lewis's co-defendants were aware that his attorney sought this continuance. Therefore, this delay should be weighed against Lewis but not against his co-defendants. *Id.*

There was a reference to a plea offer during the December 2004 hearing on Lewis's speedy trial motion. Apparently, the State offered to reduce Lewis's charge to a Class "C" misdemeanor, but Lewis ultimately rejected the offer.[5] Any delay attributable to good faith plea negotiations should not be weighed against the State. *State v. Munoz*, 991 S.W.2d 818, 824 (Tex. Crim.App.1999). However, we may presume from the record that the court attributed a delay of no more than three months to the parties' plea negotiations based on

---

4. The State contends that Brown requested two continuances but does not provide a citation to the record to support this contention. Our review of the record discloses only one continuance request on Brown's behalf.

5. During the State's cross-examination of Lewis in this hearing, Lewis agreed that an unspecified "plea bargain" was made in March 2003 and ultimately rejected by him in

September 2003. An April 3, 2003 Notice of Setting indicates that Lewis's case was scheduled for jury trial in May 2003, but an April 23 Notice of Setting indicates that it was set for a "Status/Class C Reduction" hearing in June 2003. A July 11 Notice of Setting recites that the case was again set for jury trial in September 2003.

the dates in the notice settings which appear in the record. *See Zamorano,* 84 S.W.3d at 648 (appellate court must presume that trial court resolved any disputed fact issues against losing party and must defer to any implied findings supported by the record).

Appellees contend that the mistrial should be weighed against the State because it arose from the State's failure to disclose *Brady* evidence before trial. On the second day of trial, three different pieces of evidence came to light which arguably constitute *Brady* evidence: (1) a witness for the State was unable to identify any of the four Appellees as a suspect in a photo line-up she viewed a few weeks after the assault; (2) another witness had made an electronically-recorded statement to the police suggesting that two of the Appellees may not have been involved in the assault; and (3) another person who had since joined the Army and was in basic training told the police that none of the four Appellees was involved in the assault.

Appellees filed standard *Brady* motions before trial, but the State did not identify any *Brady* evidence. During the jury trial, the State's first witness identified Manley and Brown as having been in the club where the assault occurred on the date in question. However, during the questioning of a detective that afternoon, the State provided Appellees with a copy of a detective's offense report, in which it was revealed that the witness had been unable to identify any of the defendants in a photographic line-up prepared a few weeks after the assault. Instead, the witness identified three other men in the line-up as persons who looked "familiar" to her.

Appellees also filed pretrial motions requesting copies of any recorded witness statements. Appellees' counsel discovered at trial that the police had recorded conversations with at least two witnesses and that the State had failed to provide a copy of these recordings to Appellees or even disclose their existence. The trial court ordered the State to play these recordings for Appellees and their attorneys during the lunch break. After the lunch break, counsel for Ratcliff and counsel for Lewis both asked the court to dismiss the prosecutions against their clients because the State had failed to produce five recordings which contain information suggesting that their clients may not have been involved in the assault. The court deferred a ruling on these motions.

Finally, examination of the previously undisclosed report prepared by the detective revealed that another person, Michael Bielamowicz, told the police on the night of the assault that none of the Appellees was involved in the assault. Bielamowicz was arrested for public intoxication that night, and the detective concluded, after reviewing the offense report for the public intoxication arrest, that he would not be "a credible or a reliable witness." Thus, the detective did not make any attempt to contact Bielamowicz.

At the end of the second day of trial, the court advised that a mistrial rather than a dismissal might be the appropriate remedy for a *Brady* violation but deferred a ruling and instructed the parties to try and locate Bielamowicz. The next morning it was determined that Bielamowicz was in basic training with the Army and would not be available for in-court testimony for several weeks. With the assistance of the Judge Advocate General Corps, Bielamowicz was located in South Carolina and testified via teleconference (and outside the jury's presence) about his recollection of the pertinent facts. His testimony was contradictory to that of some of the State's witnesses, and so counsel for Appellees advised the court that

they wanted Bielamowicz to be subpoenaed for his testimony. All four Appellees requested a mistrial, which the court granted.

We may presume from the record that the court attributed the delay from the mistrial to the State because of its failure to disclose the evidence which necessitated that ruling. *See Zamorano*, 84 S.W.3d at 648 (appellate court must presume that trial court resolved any disputed fact issues against losing party and must defer to any implied findings supported by the record). As the court stated in the hearing on the speedy trial motions, "the mistrial, which though inadvertent, at least is partly the State's responsibility."

The delay from the mistrial lasted a minimum of six months, which is the amount of time that passed between the court's declaration of a mistrial and the initial hearing on Lewis's speedy trial motion.[6] Because the mistrial was granted due to the State's failure to disclose *Brady* evidence, this six-month delay can be weighed against the State.

At the December 2004 status hearing, the parties tentatively agreed to a trial setting in February 2005. It was still unknown at that juncture when Bielamowicz would be available to testify, and the State had not yet provided access to the previously undisclosed tape recordings which necessitated the mistrial.

Lewis asked for a dismissal on speedy trial grounds, because a retrial would violate double jeopardy, and because there was no probable cause to support his prosecution. Lewis first presented the speedy trial argument and testified in his own behalf. Lewis explained that the delay had been burdensome for him because he

had moved to Houston a few months before the first trial to attend school and was having to miss school for hearings. He also testified that it caused him stress and anxiety to be accused of something he did not do and that the delay and additional settings caused additional stress.

On the double jeopardy claim, Lewis argued that dismissal was warranted because the State had acted in bad faith by failing to disclose the *Brady* evidence which non-disclosure was one of the grounds for the mistrial. *See Oregon v. Kennedy*, 456 U.S. 667, 679, 102 S.Ct. 2083, 2091, 72 L.Ed.2d 416 (1982); *Bauder v. State*, 921 S.W.2d 696, 699 (Tex.Crim. App.1996), *overruled by Ex parte Lewis*, 219 S.W.3d 335 (Tex.Crim.App. 2007); *Ex parte Fife*, 49 S.W.3d 35, 38 (Tex.App.-Fort Worth 2001, pet. ref'd).

Finally, Lewis argued that the case should be dismissed because none of the State's witnesses during the first trial ever identified him as one of the assailants.

The court deferred a ruling on Lewis's motion. Instead, the court advised the parties that it would review cases on the right to speedy trial, expressing doubt at that time about the merits of Lewis's speedy trial claim. The court asked the prosecutor to review his file and identify evidence tending to inculpate Lewis. All agreed that the matter would be taken up again within a few weeks. However, it was apparently not taken up again until August 2005.

After the December 2004 hearing, the clerk's record contains a June 2005 notice of setting advising the parties that the case was set for a "scheduling order" on July 8. The record also contains a July 12

---

6. The clerk's record contains two intervening setting notices during this 6–month period. The first rescheduled the case for a status hearing four months after the mistrial. The second (as amended) rescheduled the case for a status hearing and for a hearing on Lewis's speedy trial motion two months later.

notice advising that the case was set for a "preferential jury trial" setting of August 22. Except for Ratcliff's case, the clerk's record provides no indication of the reason the case was not taken up between December 2004 and June 2005.

In Ratcliff's case, the court signed an order in January 2005 transferring his case to a Brazos County district court where he had a felony case pending. In April, the district court transferred Ratcliff's case back to the County Court at Law pursuant to a plea agreement between Ratcliff and the State. This delay should not be weighed against the State. *See Munoz,* 991 S.W.2d at 824. But it should not be weighed against Ratcliff's co-defendants either.

At the August 2005 hearing, the prosecutor advised the court that the State had almost finished transcriptions of the previously undisclosed tape recordings which had necessitated the mistrial. This further delay on the part of the State should also be weighed against the State.[7]

### Assertion of Right to Speedy Trial

Lewis asserted his right to a speedy trial in a motion filed less than five months after the mistrial was declared. The other Appellees did not file speedy trial motions until ten months later, on the eve of the second trial.

After the court granted Lewis's motion to dismiss on speedy trial grounds, Brown's newly-appointed counsel asked the court for similar relief.[8] Brown's counsel acknowledged that Brown had not promptly filed a motion for this relief but argued that: (1) he had only recently been appointed; (2) all four attorneys had adopted the others' motions during the first trial; and (3) if Brown were not granted a dismissal on speedy trial grounds, then Brown would have a meritorious claim for ineffective assistance of counsel because of his prior attorney's failure to timely raise the issue.

The prosecutor opined that it would be better to treat all four cases the same "for judicial economy."

### Prejudice from Delay

Only Lewis presented testimony regarding the impact the delay was having on him. He explained that the delay had been burdensome for him because he had moved to Houston a few months before the first trial to attend school and was having to miss school for hearings. He also testified that it caused him stress and anxiety to be accused of something he did not do and that the delay and additional settings caused additional stress.

The other defendants alleged in their speedy trial motions that they were prejudiced because: (1) they have "suffered much anxiety and concern"; (2) unspecified witnesses for the defense have disappeared and/or their recall of pertinent events has faded; and (3) the "excessive delay" has "presumptively compromised the ability to defend this case in ways not susceptible to proof."

### Analysis Regarding Lewis

The length of delay for Lewis was twenty-nine months. The evidence supports a finding that eight of these months are attributable to Lewis: three for delay

---

7. As Lewis's counsel argued in the December 2004 hearing, the State's delay in providing this evidence adversely affected counsel's ability to "[f]airly cross-examine" the State's witnesses.

8. Brown was appointed new counsel in July 2005. Counsel for Manley and Ratcliff did not appear at this hearing but filed speedy trial motions that afternoon.

during plea negotiations and five for delay during his attorney's pregnancy. The court did not abuse its discretion by holding the State responsible for the mistrial, which caused an additional six months' delay. From the record, the remaining fifteen months are either unexplained or attributable to resets occasioned by the court's crowded docket or resets necessitated by scheduling difficulties arising from the State's decision to try Lewis jointly with his three co-defendants over their objections. Thus, twenty-one of the twenty-nine months can be attributed to the State. *See Dragoo v. State,* 96 S.W.3d 308, 314 (Tex.Crim.App.2003).

Lewis asserted his right to a speedy trial within a few months after the mistrial was declared. It was within the court's discretion to conclude that Lewis did not immediately assert his right to a speedy trial after the mistrial because he wanted to see how promptly the State would provide the previously undisclosed evidence.

Lewis testified about the impact the delay was having on his education and the stress and anxiety it was causing him. In addition, ten months after Lewis filed his speedy trial motion and three days before trial, the State had still not produced all the previously undisclosed evidence which had necessitated the mistrial.

Accordingly, we hold that the court did not abuse its discretion by granting Lewis's motion to dismiss.

### Analysis Regarding Brown

■ The length of delay for Brown was thirty-four months. The evidence supports a finding that only one of these months is attributable to Brown's continuance motion. The court did not abuse its discretion by holding the State responsible for the mistrial, which caused an additional six months' delay. From the record, the remaining twenty-seven months are either unexplained or attributable to resets occasioned by the court's crowded docket or resets necessitated by scheduling difficulties arising from the State's decision to try Brown jointly with his three co-defendants over their objections. Thus, thirty-three of the thirty-four months can be attributed to the State. *See Dragoo,* 96 S.W.3d at 314.

■ Brown did not directly assert his right to a speedy trial until the eve of trial. Nevertheless, Brown essentially argued that he should be credited with asserting his right to a speedy trial at the same time Lewis did because the attorneys had stated during the first trial that they were adopting each other's motions. We disagree.

During the June 2004 trial when the issue first arose regarding whether the State had possession of one or more tape recordings which had not been previously disclosed, the following interchange occurred:

Ratcliff's Counsel: Judge, while we've got everyone here, I would like to get something on the record. I'm making an oral motion to adopt all objections and motions made by other counsel in this case so that we don't have to each object—you know, each one of us object to make a record.

Manley's Counsel: Individually. Yeah.

Ratcliff's Counsel: On behalf of Brandon Ratcliff, I move that the Court allow my client and I to adopt all motions and objections made by other counsel.

The Court: Other defense counsel?

Ratcliff's Counsel: Yes.

Manley's Counsel: Yes. I request the same in regards to Malcom [Malcolm] Manley.

Lewis's Counsel: Your Honor, I request the same in regards to Mr. Lewis.

Brown's Counsel: I would like the same for Mr. Brown, as well, Judge.

The Court: I honestly don't know whether each defendant would automatically get the benefit of objections made by someone else's attorney on appeal; but I'll, based on your motions, assume that all the motions and objections by any defense counsel have been adopted by the other three.

Fourteen months later and three days before the second trial was scheduled to begin, Brown first raised the speedy trial issue on his own behalf. In considering Brown's claim and the timeliness of his assertion, the trial court concluded that, even at the time of the hearing, Brown had not yet properly asserted the issue because he had not filed a speedy trial motion. In the court's words near the end of the hearing, "I'm going to wait until somebody asserts the right." [9] The court's view of the matter is further supported, as the court observed, by the fact that when the court first heard Lewis's speedy trial motion in December 2004, Brown's counsel and the other attorneys left the courtroom, having obtained their February trial setting.

■ A co-defendant can adopt by reference the objections of another co-defendant. *See Martinez v. State*, 833 S.W.2d 188, 191 (Tex.App.-Dallas 1992, pet. ref'd); Frederick C. Moss, *Rethinking Texas Evidence Rule* 103, 57 Baylor L.Rev. 503, 539–40 (2004).[10] Nevertheless, given the passage of time and the failure of Brown and the other Appellees to participate with

Lewis in the December 2004 speedy trial hearing, it was within the court's discretion to conclude that defense counsels' adoption of each others' objections and motions was limited to those presented in the first trial and did not extend to the speedy trial motion which Lewis filed several months later.

■ The court almost explicitly found that Brown did not assert his right to a speedy trial in a timely fashion. As Brown's counsel observed however, the timeliness of the assertion of this right is not dispositive. *See Dragoo*, 96 S.W.3d at 314. Although this is true, "a defendant's lack of a timely demand for a speedy trial 'indicates strongly that he did not really want a speedy trial'.... Thus, inaction weighs more heavily against a violation the longer the delay becomes." *Id.* (quoting *Harris v. State*, 827 S.W.2d 949, 957 (Tex. Crim.App.1992)). Accordingly, Brown's failure to timely assert his right to a speedy trial "weighs very heavily against finding a violation of his right to a speedy trial." *See Shaw*, 117 S.W.3d at 890 (addressing 38–month delay and defendant's failure to file speedy trial motion until 32 months had passed or seek a hearing until the eve of trial).

Brown alleged in his speedy trial motion that he was prejudiced because: (1) he had "suffered much anxiety and concern"; (2) unspecified defense witnesses had disappeared and/or their recall of pertinent events had faded; and (3) the "excessive delay" has "presumptively compromised

---

9. The court had already announced its intention to grant Lewis's speedy trial motion and proceed to trial with the other three defendants.

10. According to Professor Moss,

Co-parties may escape the technical rigors of the "all must object" rule by seeking a ruling from the court, preferably before trial, that the objections of one co-party will be deemed joined by all unless the parties otherwise indicate. This will preserve error for all co-parties even though they were silent when a co-party objected to the admission or exclusion of evidence.

Frederick C. Moss, *Rethinking Texas Evidence Rule 103*, 57 Baylor L.Rev. 503, 540 (2004).

the ability to defend this case in ways not susceptible to proof." He offered no testimony to support his allegations of anxiety and concern, nor did he identify the witnesses who have disappeared or whose recall had faded.

However,

affirmative proof of particularized prejudice is not essential to every speedy trial claim, because "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." On the other hand, this "presumption of prejudice" is "extenuated ... by the defendant's acquiescence" in the delay.

*Dragoo,* 96 S.W.3d at 315 (quoting *Doggett,* 505 U.S. at 655, 658, 112 S.Ct. at 2693, 2694) (citation omitted).

The delay was presumptively prejudicial to Brown's defense, "but this presumption is extenuated by [his] longtime acquiescence in the delay." *See Shaw,* 117 S.W.3d at 890.

The facts in Brown's case are similar to the facts in *Shaw.* The length of delay and the reasons for delay weigh in favor of a finding that his right to a speedy trial was violated. *See id.* at 891. Conversely, his failure to timely assert this right and his failure to demonstrate prejudice weigh against such a finding. Id. But Brown's case is different in two respects. First, the trial court found that Brown's right to a speedy trial was violated while the trial court in *Shaw* found to the contrary. *Cf. id.* at 887–88. And second, the delay in *Shaw* was generally attributed to a crowded docket, defense continuances, and a mistrial due to a hung jury. *See id.* at 886, 889–90. Conversely in Brown's case, the mistrial was due to the State's failure to comply with its obligation to disclose *Brady* evidence. And to compound this failure, the State had still not provided defense counsel with transcriptions of the tape recordings in question on the eve of trial.

This is a close question. Nevertheless, the record supports the trial court's ruling so we "must uphold" it. *Id.* at 889.

### Analysis Regarding Manley

■ The analysis for Manley is similar to that for Brown. The length of delay was the same. The evidence supports a finding that only three of these thirty-four months is attributable to Manley's continuance motion. Thus, thirty-one of the thirty-four months can be attributed to the State. *See Dragoo,* 96 S.W.3d at 314.

Neither Manley nor his counsel appeared at the August 2005 pretrial hearing in which the court granted Lewis's speedy trial motion and heard Brown's argument that he was entitled to the same relief. But Manley did file a speedy trial motion about thirty minutes before Brown filed his.[11]

As with Brown, we presume that the court found that Manley did not assert his right to a speedy trial in a timely fashion. *See Shaw,* 117 S.W.3d at 890.

Manley alleged in his speedy trial motion the same forms of prejudice caused by the delay as Brown did but offered no testimony to support his allegations of anxiety and concern and did not identify the witnesses who have disappeared or whose recall had faded. The delay was presumptively prejudicial to Manley's defense, "but this presumption is extenuated by [his] longtime acquiescence in the delay." *See Shaw,* 117 S.W.3d at 890.

As with Brown, two of the factors applicable to Manley weigh in favor of a finding that his right to a speedy trial was violated

---

**11.** Brown filed his speedy trial motion at 2:58 p.m. Manley had already filed his at 2:29.

and two weigh against such a finding. *Id.* at 891. Nevertheless, the record supports the trial court's ruling so we "must uphold" it. *Id.* at 889.

### Analysis Regarding Ratcliff

■ The primary distinction in Ratcliff's case is that the length of delay (nineteen months) is almost half the length of delay in Brown's and Manley's cases. However, we may presume from the record that the court attributed the entirety of the delay in Ratcliff's case to the State. *See Zamorano,* 84 S.W.3d at 648.

Neither Ratcliff nor his counsel appeared at the August 2005 pretrial hearing in which the court granted Lewis's speedy trial motion and heard Brown's argument that he was entitled to the same relief. But Ratcliff did file a speedy trial motion about thirty minutes before Brown filed his and around the same time Manley filed his.[12]

As with Brown and Manley, we presume the court found that Ratcliff did not assert his right to a speedy trial in a timely fashion. *See Shaw,* 117 S.W.3d at 890.

Ratcliff alleged in his speedy trial motion the same forms of prejudice caused by the delay as Brown and Manley did but offered no testimony to support his allegations of anxiety and concern and did not identify the witnesses who have disappeared or whose recall had faded. The delay was presumptively prejudicial to Ratcliff's defense, "but this presumption is extenuated by [his] longtime acquiescence in the delay." *See Shaw,* 117 S.W.3d at 890.

As with Brown and Manley, two of the factors applicable to Ratcliff weigh in favor of a finding that his right to a speedy trial was violated and two weigh against such a

finding. *Id.* at 891. Nevertheless, the record supports the trial court's ruling so we "must uphold" it. *Id.* at 889.

We affirm the dismissal orders as to all four Appellees.

---

Chief Justice GRAY dissenting.

TOM GRAY, Chief Justice, dissenting.

For the reasons stated below, I dissent. I sometimes believe, based upon the case law, that a majority of the Court gives too little deference to the trial court's discretion. *E.g., Gonzales v. State,* Nos. 10–03–00309–CR & 10–03–00312–CR, 2005 WL 428463, at *4, 2005 Tex.App. LEXIS 1501, at *9–*12 (Tex.App.-Waco Feb. 23, 2005, no pet.) (Gray, C.J., concurring) (not designated for publication). Here, again based upon the case law, I believe that the majority gives too much.

I disavow, first, of course, as I often do, the majority opinion's extravagantly unnecessary dicta. *E.g., Villanueva v. State,* 209 S.W.3d 239, 249–52 (Tex.App.-Waco no pet.) (Gray, C.J., dissenting). It does not require twenty-three pages to dispose of these cases, even though they are four, related cases. The majority's discussion of the several states' speedy-trial acts, (*see* slip op. at 4–8 (majority op.)), is particularly egregious: Texas does not have a speedy trial act.

Next, the majority correctly states, then disregards, the standard of review. "[W]e apply a bifurcated standard of review: an abuse of discretion standard for the factual components, and a *de novo* standard for the legal components." (Op. at 119 (majority op.) (quoting *Zamorano v. State,* 84 S.W.3d 643, 648 (Tex.Crim.App.2002)).) For instance, the majority holds that "[t]he court did not abuse its discretion by hold-

---

12. Ratcliff filed his speedy trial motion somewhere between 2:20 and 2:29–the last number is indecipherable. The court's signed dismissal order was entered at 2:30.

ing the State responsible for the mistrial," and that "the record supports the trial court's ruling" on matters of law "so we 'must uphold' it." (Id. at 126, 127, 129, 130 (quoting *Shaw v. State*, 117 S.W.3d 883, 889 (Tex.Crim.App.2003)).) Here, the facts are largely undisputed. We must uphold the trial court's legal ruling on a speedy-trial motion only if the ruling is "correct under the applicable law." *Shaw*, 117 S.W.3d at 889 (citing *State v. Munoz*, 991 S.W.2d 818, 821 (Tex.Crim.App.1999)). Among the factors to which, as a matter of law, we must hold strongly against the appellants, especially Manley, Brown, and Ratcliff, is the untimely assertion of the right to a speedy trial. *See Kelly v. State*, 163 S.W.3d 722, 727–29 (Tex.Crim.App. 2005); *see also Barker v. Wingo*, 407 U.S. 514, 532, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). "[F]ailure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Barker* at 532, 92 S.Ct. 2182.

The majority similarly fails to consider the weight that each factor in the analysis carries. The majority states the standard of review: "Different weights are assigned to the various reasons for the delay asserted by the State." (Op. at 122 (majority op.) (citing *Shaw*, 117 S.W.3d at 889)); *see Barker*, 407 U.S. at 531, 92 S.Ct. 2182. A period of time may weigh "very heavily," "more heavily," "heavily," "less heavily," "moderately," or only "lightly" either for or against a party. *E.g., Barker* at 531, 92 S.Ct. 2182; *Kelly*, 163 S.W.3d at 729, 730; *Shaw* at 890; *Dragoo v. State*, 96 S.W.3d 308, 312, 314 (Tex.Crim.App.2003); *Zamorano*, 84 S.W.3d at 649, 651; *Munoz*, 991 S.W.2d at 822; *Deeb v. State*, 815 S.W.2d 692, 706 (Tex.Crim.App.1991); *Chapman v. Evans*, 744 S.W.2d 133, 136 (Tex.Crim. App.1988) (orig. proceeding). The majority, however, considers all periods of time as carrying equal weight. For example, the majority holds that "twenty-one of the twenty-nine months can be attributed to the State" as to Lewis, "thirty-three of the thirty-four months can be attributed to the State" as to Brown, and "thirty-one of the thirty-four months can be attributed to the State" as to Manley. (at 127, 129 (majority op.).) Again, particularly as to the assertion of the right to a speedy trial, and particularly as to Manley, Brown, and Ratcliff, the majority fails to give due weight to the failure to assert the right timely.

For the reasons above, I dissent.